William C. Milks, III (SBN 114083)
Law Offices of William C. Milks, III
40 Main Street
Los Altos, CA  94022
Tel.:  (650) 930-6780
Fax:  (650) 949-0844
Email:  bmilks@sbcglobal.net

*Attorney for Defendants Konda Technologies, Inc. and Venkat Konda*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUICKLOGIC CORPORATION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>KONDA TECHNOLOGIES, INC. and VENKAT KONDA,<br><br>　　　Defendants. | Case No. 4:21-cv-04657-JSW<br><br>**NOTICE OF MOTION AND KONDA TECHNOLOGIES, INC. AND VENKAT KONDA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT AND NON-BREACH OF CONTRACT**<br><br>*[Filed Concurrently with the Declaration of Venkat Konda, Ph.D. and [PROPOSED] ORDER]*<br><br>**[Fed. R. Civ. P. Rules 12(b)(1) and (h)(3)]**<br><br>**Hearing Date:  JANUARY 14, 2022**<br>**Time:  9:00 AM PST**<br>**Courtroom 5, 2nd Floor**<br>**Before:  Honorable Jeffrey S. White**<br><br>**Date Complaint Filed:  June 16, 2021**<br>**Trial Date:  None** |

　　　NOTICE TO ALL PARTIES AND THEIR COUNSEL OF RECORD, Defendants Konda Technologies, Inc. and Venkat Konda, Ph.D. (collectively "Moving Defendants") hereby move the Court pursuant to Fed. R. Civ. P. Rules 12(b)(1) and h(3)to dismiss the Complaint (Dkt. No. 1) filed by QuickLogic Corporation for lack of subject matter jurisdiction in that "a case of actual controversy"

amongst the parties does not presently exist under Article III, section 2, clause 1 of the U.S. Constitution and 28 U.S.C. § 2201(a).

# Table of Contents

**I. STATEMENT OF MATERIAL FACTS** ................................................................................**4**

**II. LEGAL AUTHORITY** ..........................................................................................................**10**

**III. ARGUMENT** ........................................................................................................................**11**

    **A.   QuickLogic Has Not Established a "Case" or "Controversy" Under Article III of the U.S. Constitution and 28 U.S.C. § 2201(a) Exists Regarding Konda Tech's Patents.**...........................**11**

    **B.   QuickLogic Has Not Established a "Case" or "Controversy" Under Article III of the U.S. Constitution and 28 U.S.C. § 2201(a) Regarding the License Between QuickLogic and Konda Tech.** ......................................................................................................................................**16**

    **C.   Were the Court to Find a "Case" or "Controversy" Exists, the Court Should Nevertheless Exercise Its Discretion and Dismiss the Present Declaratory Judgment Action.**..........................**18**

**IV. CONCLUSION** ....................................................................................................................**19**

# TABLE OF AUTHORITIES

**Federal Statutes**

28 U.S.C. § 2201 ............................................................................................................... 11, 16, 19
28 U.S.C. § 2201(a) .............................................................................................................3, 10, 11

**Federal Rules**

Fed. R. Civ. P. Rules 12(b)(1) and h(3) ........................................................................................10, 19
Fed. R. Civ. P. Rules 12(b)(1), (h)(3) ..............................................................................................10

**Cases**

*Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121-22 (9th Cir.2010) ............................ 11
*3M Co. v. Avery Dennison Corp.,* 673 F.3d 1372, 1376 (Fed. Cir. 2012) ........................................ 11, 18
*ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1346-47 (Fed. Cir. 2011) ........................................ 12
*ABB Inc.*, *supra*, at 635 F.3d 1345, 1346-47 ........................................................................................ 15
*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937) ................................. 12
*Aetna Life Ins. v. Haworth,* 300 U.S. 227, 239-40 (1937) ..................................................................... 11
*Applera Corp. v. Michigan Diagnostics, LLC* .................................................................................... 14
*Applera Corp. v. Michigan Diagnostics, LLC,* 594 F. Supp. 2d 150, 158-60 (D. Mass. 2009); ............. 13
*Applera Corp.*, *supra*, at 594 F. Supp. 2d 150, 158-60 .......................................................................... 15
*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) .............................................................................. 10
*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1321 (Fed. Cir. 2012); ............................................................................................................................................ 13
*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1318 (Fed. Cir. 2012) *cert. granted on other grounds,* 12-398, 2012 WL 4508118 (U.S. Nov. 30, 2012); ................. 13
*Ass'n for Molecular Pathology*, *supra*, at 689 F.3d 1303, 1318 ............................................................. 15
*Bennett v. Spear,* 520 U.S. 154, 162 (1997) .......................................................................................... 11
*Cepheid v. Roche Molecular Sys., Inc.*, ................................................................................................ 14
*Cepheid*, *supra*, at p. 19 ........................................................................................................................ 19
*Chafin v. Chafin,* 568 U.S. 165, 172 (2013) .......................................................................................... 11
*Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121-22 (9th Cir.2010) ............................ 16
*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ............................... 10
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) .................................................................... 17
*Edmunds Holding Co. v. Autobytel Inc.*, ............................................................................................. 14
*Flury v. Marriott Int'l Inc.* (D. Ariz., May 13, 2020, No. CV-19-04642-PHX-JJT) [pp. 6-7] ................ 17
*Hewlett-Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1362-63 (Fed. Cir. 2009) ............................. 12
*Hewlett-Packard Co.*, *supra*, 587 F.3d at 1364 ...................................................................................... 13
*Hewlett-Packard Co.*, *supra*, at 587 F.3d 1358, 1362-63. .............................................................. 14, 15

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1380 (Fed. Cir. 2010) *cert. denied,* 131 S. Ct. 424 (U.S. 2010) ................................................................................................................. 13
*Innovative Therapies, Inc.*, *supra*, at 599 F.3d 1377, 1380 ........................................................... 15, 16
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ............................................. 10
*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) ..................................................................... 11
*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ................................................................... 10
*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ....................................................... 12
*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 132 n.11 (2007) ............................................... 12
*Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 899 (Fed. Cir. 2008) ..................... 13
*Monsanto Co. v. Syngenta Crop Prot., Inc.,* ...................................................................................... 13
*Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1334 (Fed. Cir. 2008); .............................. 13
*Prasco, supra,* 537 F.3d at 1341 ........................................................................................................ 13
*Prasco*, *supra*, at 537 F.3d at 1334 .................................................................................................... 15
*SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1374-76 (Fed. Cir. 2007); ................... 12
*SanDisk Corp.*, *supra*, at 480 F.3d 1372, 1374-76 ............................................................................ 15
*Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) ............................... 11
*Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters* (E.D. Wash., Apr. 18, 2019, No. 2:17-cv-00250-SMJ) [pp. 14-15] ................................................................................................................. 17
*St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ............................................................. 10
*Steel Co. v. Citizens for a Better Env't* , 523 U.S. 83, 101-02 (1998) ................................................ 11
*T'Bear v. Forman* (N.D. Cal., Feb. 12, 2020, No. 17-cv-00796-JSC) [pp. 24] ................................. 18
*United States v. State of Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) ..................................... 18
*Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003) ............................ 12, 16
*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). ........................................................................... 17
*Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995)). ...................................................................... 18
*Wooster Brush Co. v. Bercom Int'l, LLC* ........................................................................................... 14

# I. STATEMENT OF MATERIAL FACTS

Konda Technologies, Inc. ("Konda Tech") and QuickLogic Corporation ("QuickLogic") executed a Mutual Non-Disclosure Agreement ("2010 Mutual NDA") on September 3, 2010. (*See*, Declaration of Venkat Konda, Ph.D. ("Konda Decl.") at ¶2 and Exh. 1 attached thereto.) On October 5, 2010 QuickLogic and Konda Tech executed a licensing and consulting agreement ("2010 Licensing and Consulting Agreement"). (*See*, Konda Decl. at ¶3 and Dkt. No. 1-3.) Under the 2010 Licensing and Consulting Agreement, QuickLogic acquired a perpetual non-exclusive license to Konda Tech's Patents/Patent Applications listed in Exhibit A to the 2010 Licensing and Consulting Agreement. (*See*, Konda Decl. at ¶4 and Dkt. No. 1-3 at pp. 7-8.) Section 1.1 of the 2010 Licensing and Consulting Agreement reads as follows:

> **1.1   License Grant.**  Subject to payment in full of the one-time, paid-up license fee set forth below, Konda hereby grants to QuickLogic a non-exclusive, royalty-free, irrevocable and world-wide right, with rights to sublicense through multiple tiers of sublicensees, to reproduce, make derivative works of, publicly perform, publicly display and distribute in any form or medium, whether now known or later developed, and to make, have made, use, import, offer to sell, and sell the **Konda Intellectual Property incorporated or used in the programmable logic of QuickLogic products for the purpose of developing and marketing QuickLogic products or otherwise commercializing QuickLogic's technology, but not for the purpose of marketing Konda Intellectual Property separate from QuickLogic products.** (*See*, *Id*. at p. 1.)

In or about April 2021, Dr. Konda learned that QuickLogic had apparently joined certain open software source initiatives, namely, 1) the Open Source FPGA Foundation as a founding and Premier Member, and 2) the QuickLogic Open Reconfigurable Computing Initiative.  (*See*, Konda Decl. at ¶5, Dkt. No. 1 at ¶18, and Dkt. No. 1-1 at pp. 1-2.) Upon learning that QuickLogic joined the open source initiatives, Dr. Konda, CEO of Konda Tech, sent an email to Brian Faith ("Mr. Faith"), CEO of QuickLogic and Tim Saxe, Ph.D. ("Dr. Saxe"), CTO of QuickLogic, on April 30, 2021 inquiring if

QuickLogic joining the open source initiatives was within the scope of the 2010 Licensing and Consulting Agreement. (*See*, Konda Decl. at ¶6 and Dkt. No. 1-1. at pp. 1-2).

Mr. Faith replied to Dr. Konda by email on the same day that: "We [QuickLogic] did not commercialize the architecture from your work; we implemented a different one.  As such, we are not violating the licensing and consulting agmt signed Sept 2010 by QuickLogic and Konda Technologies." (*See*, Konda Decl. at ¶6 and Dkt. No. 1-1. at p. 1) Dr. Konda replied to Mr. Faith on May 3, 2021 and inquired of Mr. Faith whether:

> 1. QuickLogic is indeed putting Quicklogic's FPGA interconnect in the previously mentioned, in this email thread, initiatives including for public use/play.
> 2. QuickLogic's FPGA interconnect architecture in its products is different from the patents licensed by Quicklogic from Konda Technologies in the September 2010 Agreement.
>     1. However QuickLogic's FPGA interconnect architecture in its products is based on the patents licensed by Quicklogic from Konda Technologies in the September 2010 Agreement.
>         1. This was previously confirmed by you [Mr. Faith] and Tim [Saxe] previously to me.
>     2. Quicklogic's FPGA interconnect in its products is not violating the 19 Granted Konda Technologies FPGA Interconnect patents (only 5 patents were licensed by Quicklogic from Konda Technologies in the September 2010 Agreement)
>         1. Please see attached Konda Technologies patent Portfolio.
> 3. QuickLogic is not putting Konda Interconnect Intellectual Property disclosed in the patents listed in the attached Konda Technologies Portfolio in the Open Source initiatives mentioned in this email thread.  (*See*, Konda Decl. at ¶8 and Dkt. No. 1-1 at p. 1.)

Mr. Faith did not address any of Dr. Konda's above inquiries, much less respond to Dr. Konda. Instead, QuickLogic engaged Baker Botts LLP ("Baker Botts") attorneys John Swenson ("Mr. Swenson") and Hopkins Guy ("Mr. Guy") to respond to Dr. Konda. (*See*, Konda Decl. at ¶9 and Dkt. No. 1-17 at p. 18) Mr. Swenson sent an email to Dr. Konda on May 5, 2020 with an attachment stating that Mr. Swenson, who is not an officer of QuickLogic, would be responding to Dr. Konda's inquiries and instructed Dr. Konda to direct all future correspondence regarding this matter to Mr. Swenson at Baker Botts.  (*See*, Konda Decl. at ¶10 and Dkt. No. 1-4.) For weeks, however, Dr. Konda did not receive any response from Mr. Swenson or QuickLogic, much less any responses to the inquiries posed in Dr. Konda's May 3, 2021 email. Believing that he was not going to timely receive a response

to his earlier inquires, on May 20, 2021, Dr. Konda sent an email to Mr. Swenson (*See*, Konda Decl. at ¶12 and Dkt. No. 1-17 at pp. 16-17) attaching a "Cease and Desist" letter "VIA E-MAIL" to Mr. Swenson and Mr. Faith stating:

> **While Dr. Konda is waiting for the response** from Mr. Swenson, Dr. Konda is sending this CEASE and DESIST letter.  IT IS REQUIRED THAT YOU CEASE AND DESIST THE FOLLOWING: 1) Unauthorized use or induce to use Konda Technologies FPGA Interconnect Patent Portfolio; 2) Violation of the licensing and consulting agreement signed in September 2010 by QuickLogic Corporation and Konda Technologies.
> If you fail to comply with the aforementioned demand(s), we will have no choice but to pursue all legal causes of action, ..."  (*See*, Konda Decl. at ¶12 and Dkt. No. 1-5 at pp. 1-2 (emphasis added).)

Approximately a week later, on May 26, 2021 Mr. Swenson sent an email to Dr. Konda stating that he sent a letter dated May 26, 2021 by United States Postal Service ("USPS") Certified Mail to Dr. Konda.  (*See*, Dkt. No. 1-17 at p. 16.) However, Dr. Konda has never received that letter.  (*See*, Konda Decl. at ¶13 and Dkt. No. 1-17 at p. 15.) On June 8, 2021 at 2:36PM PDT without responding to the inquiries in Dr. Konda's May 3, 2021 email, Mr. Swenson sent an email (*See*, Konda Decl. at ¶14 and Exh. 2 attached thereto at p.1, and Dkt. No. 1-17 at p. 14.) attaching a declaratory judgment complaint to Dr. Konda "VIA EMAIL"(*See*, Konda Decl. at ¶14 and Exh. 3 attached thereto and Dkt. No. 1-17 at p. 14.)  On June 8, 2021, Dr. Konda replied by email to Mr. Swenson that he did not receive the purported Certified Mail sent by Mr. Swenson on May 26, 2021 and that Dr. Konda would respond after receiving the Certified Mail.  Dr. Konda also asked if Mr. Swenson had received acknowledgment from the USPS that his May 26, 2021 Certified Mail had been delivered to Dr. Konda. (*See*, Konda Decl. at ¶15 and Dkt. No. 1-17 at p. 15.) Mr. Swenson never answered if he had received an acknowledgement from the USPS of the delivery of his purported May 26, 2021 Certified Mail to Dr. Konda.  (*See*, Konda Decl. at ¶17.)  Later it was determined that Mr. Swenson sent the Certified Mail to the wrong address.

On June 9, 2021 at 1:08AM PDT, Dr. Konda replied by email to Mr. Swenson's June 8, 2021 email and requested Mr. Swenson to resend the Certified Mail to the correct address to comply with Section 8.2 of the 2010 Licensing and Consulting Agreement.  (*See*, Konda Decl. at ¶18 and Dkt. No. 1-17 at pp. 13-14.) Furthermore Dr. Konda stated to Mr. Swenson in his June 9, 2021 email at 1:08PM PDT that the following appear to not have been valid services under Section 8.2 of the 2010 Licensing and Consulting Agreement:  "1) Your May 26, 2021 letter via certified mail to wrong address to me and 2) My Cease and desist letter to you emailed on May 20, 2021."  Dr. Konda further stated that he would meet with an officer of QuickLogic in accordance with the Informal Dispute Resolution provision in Section 8.7 of the 2010 Licensing and Consulting Agreement.  (*See*, Konda Decl. at ¶20 and Dkt. No. 1-17 at pp. 10-12) Section 8.7 of the 2010 Licensing and Consulting Agreement reads as follows:

> **8.7    Informal Dispute Resolution.**  In the event of any dispute or disagreement between the parties hereto either with respect to the interpretation of this Agreement or the performance of any obligations set forth herein, whether in contract, statute, tort such as negligence or otherwise (each a "Dispute"), **an officer of Konda and an officer of QuickLogic shall meet to negotiate and resolve such matters in good faith without resort to formal legal proceedings**.  If the officers are unable to resolve the dispute within 10 business days after referral of the matter to them, then either party shall have the right to institute legal proceedings to seek any remedy available under law or equity.  (*See*, Dkt.No. 1-3 at p. 5 (emphasis added).)

Dr. Konda in his June 10, 2021 email at 1:44PM PDT stated to Mr. Swenson:

> "So once again I, as an officer of Konda, propose to meet face to face an officer of Quicklogic to negotiate and resolve the raised matters in good faith without resort to formal legal proceedings.  Please propose an officer of QuickLogic and convenient times to meet.  (I am vaccinated.  My 2nd dose of Moderna was way back on April 28, 2021.)  Konda is confident that in face to face meetings we can resolve the issues pursuant to section 8.7." (*See*, Konda Decl. at ¶21 and Dkt. No. 1-17 at pp. 5-6)

However, Mr. Swenson argued that the Informal Dispute Resolution procedure that officers meet and confer started on May 26, 2021; that he would not file Exhibits 2 and 3 to the proposed complaint under seal of Court; and that QuickLogic would not execute another Mutual Non-Disclosure Agreement as Dr. Konda requested. On June 16, 2021 QuickLogic then proceeded to file the present

Declaratory Judgement action without the officers of Konda Tech and QuickLogic ever having met as required by Section 8.7 of the 2010 Licensing and Consulting Agreement.

The Moving Defendants request the Court to dismiss the Complaint (Dkt. No. 1) filed by QuickLogic pursuant to Fed. R. Civ. P. Rules 12(b)(1) and h(3) for lack of subject matter jurisdiction in that "a case of actual controversy" amongst the parties does not presently exist under Article III, section 2, clause 1 of the U.S. Constitution and 28 U.S.C. § 2201(a) and that QuickLogic failed to comply with the mandatory Informal Dispute Resolution requirement in Section 8.7 of the 2010 Licensing and Consulting Agreement.  The Moving Defendants also submit that this is an exceptional case in that QuickLocic has acted in bad faith and that the Court award the Moving Defendants their attorney's fees and costs.

## II. LEGAL AUTHORITY

The Court must dismiss a civil action if at any time it determines it lacks subject matter jurisdiction.  Fed. R. Civ. P. Rules 12(b)(1), (h)(3).  Federal courts have limited subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  A federal court presumes a civil action lies outside its limited jurisdiction, and the burden to prove otherwise rests on the party (*i.e.*, QuickLogic) asserting jurisdiction exists. (*See*, *Id.*)  The party invoking a federal court's jurisdiction bears the burden of establishing the case-or-controversy requirement is met.  *See*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The opposing party (*i.e.*, Moving Defendants) can never forfeit or waive a challenge to subject matter jurisdiction.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint, on its face, fails to allege facts sufficient to establish subject matter jurisdiction.  *See*, *Savage v. Glendale*

Konda Technologies and Venkat Konda's Motion to Dismiss      10      Case No. 4:21-cv-04657-JSW

*Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). If a declaratory judgment plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction and the case must be dismissed. *See*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Additionally, the related doctrine of ripeness is a means by which federal courts dispose of matters that are premature for review because the purported injuries are too speculative and may never occur. As standing and ripeness pertain to the federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.

### III. ARGUMENT

**A.     QuickLogic Has Not Established a "Case" or "Controversy" Under Article III of the U.S. Constitution and 28 U.S.C. § 2201(a) Exists Regarding Konda Tech's Patents.**

Article III, section 2, clause 1 of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." The case-or-controversy requirement ensures federal courts do not "'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990)). The same limitation of "judicial power" is engrained in 28 U.S.C. § 2201. *3M Co. v. Avery Dennison Corp.,* 673 F.3d 1372, 1376 (Fed. Cir. 2012), citing *Aetna Life Ins. v. Haworth,* 300 U.S. 227, 239-40 (1937).

> To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.

*Bennett v. Spear,* 520 U.S. 154, 162 (1997) (internal citations omitted). *"*Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121-22 (9th Cir.2010). *"*A jurisdictional challenge under Rule 12(b)(1) may be made either on

the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003).

In 2007, the Supreme Court rejected the Federal Circuit's prior rule that in order to establish standing in declaratory judgment actions against patent holders, the plaintiff must show a *"*reasonable apprehension of suit." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 132 n.11 (2007). Instead, the Court held that the critical issue for determining whether there is standing in such cases "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In order to establish standing, the Supreme Court has "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937)). The Court has recognized that this is not a bright line inquiry, but dependent upon the facts in each case. *Id.*

Since *Medimmune,* a number of Federal Circuit cases have applied this fact-based, "all the circumstances" test to determine when standing exists to seek declaratory judgment of non-infringement or the invalidity of a patent. In so doing, courts have looked at a number of factors, including the depth and extent of infringement analysis conducted by the patent holder, *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1374-76 (Fed. Cir. 2007); the strength of any threatening language in communications between the parties, *ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1346-47 (Fed. Cir. 2011); whether the patent holder imposed a deadline to respond, *Hewlett-Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1362-63 (Fed. Cir. 2009); any prior litigation between the

parties, *id.*; the patent holder's history of enforcing the patent-in-suit, *Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 899 (Fed. Cir. 2008); whether the patent holder's threats have induced the alleged infringer to change its behavior, *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1318 (Fed. Cir. 2012) *cert. granted on other grounds,* 12-398, 2012 WL 4508118 (U.S. Nov. 30, 2012); the number of times the patent holder has contacted the alleged infringer, *Hewlett-Packard Co., supra,* 587 F.3d at 1364; *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1334 (Fed. Cir. 2008); whether the patent holder is simply a holding company with no sources of income other than enforcing patent rights, *id.*; whether the patentee refused to give assurance it will not enforce its patent, *Prasco, supra,* 537 F.3d at 1341; whether the patent holder has identified a specific patent and specific infringing products, *id.*; *Applera Corp. v. Michigan Diagnostics, LLC,* 594 F. Supp. 2d 150, 158-60 (D. Mass. 2009); the extent of the patent holder's familiarity with the product prior to the suit, *Prasco,* 537 F.3d at 1334; *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1380 (Fed. Cir. 2010) *cert. denied,* 131 S. Ct. 424 (U.S. 2010); the length of time transpired after the patent holder asserts infringement, *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1321 (Fed. Cir. 2012); and whether communications initiated by the declaratory judgment plaintiff have the appearance of an attempt to create a controversy in anticipation of filing suit. *Innovative Therapies,* 599 F.3d. at 1381.

For example, in *Monsanto Co. v. Syngenta Crop Prot., Inc.,* the court found that there was no justiciable controversy where the defendant had sent only a single letter to the plaintiff asking the plaintiff to refrain from recommending allegedly infringing uses of its product, and where the defendant had not provided an analysis of alleged infringement, nor had it demanded payment of royalties. 4:07-CV-543 CEJ, 2008 WL 294291, at *6 (E.D. Mo. Jan. 31, 2008).

In *Applera Corp. v. Michigan Diagnostics, LLC,* the court found no justiciable controversy where the defendant recommended that the plaintiff review all of the defendant's patents, but never specifically identified which patents it alleged were infringed. 594 F. Supp. 2d 150, 158-60 (D. Mass. 2009). The defendants in *Wooster Brush Co. v. Bercom Int'l, LLC,* did identify a specific patent that it claimed the plaintiff's product infringed, but after the plaintiff responded with a detailed analysis showing non-infringement, the parties had no further communication until the suit was filed. 5:06CV474, 2008 WL 1744782, at *4 (N.D. Ohio Apr. 11, 2008). The court found that there was no justiciable controversy. *Id.*

In *Edmunds Holding Co. v. Autobytel Inc.,* the defendant had sued other companies similar to plaintiff - including plaintiff's customers - but had taken no specific actions against the plaintiff. 598 F. Supp. 2d 606 (D. Del. 2009).

In *Cepheid v. Roche Molecular Sys., Inc.*, the patent was merely listed along with fifteen other non-expiring patents and neither of the communications by defendant suggested that any of plaintiff's products were covered by the patent. (N.D. Cal., Jan. 17, 2013, No. C-12-4411 EMC at p. 15)

In the present case, the totality of circumstances establish that QuickLogic has not pleaded a "Case" or "Controversy" required to sustain its Complaint for declaratory relief. Here, there is a patent licensing agreement between QuickLogic and Konda Tech. (*See*, Dkt. No. 1-3.) The 2010 Licensing and Consulting Agreement states in Section 8.7 that officers of the parties are required to engage in good-faith Informal Dispute Resolution. (*See*, Dkt.No. 1-3 at p. 5.)
There has been no prior litigation between the parties. *See*, *Hewlett-Packard Co.*, *supra*, at 587 F.3d 1358, 1362-63. In the case of Flex Logix Technologies, Inc., Flex Logix sued Konda Tech and Dr. Konda first, and there was no licensing agreement between Flex Logix and Konda Tech, whereas here QuickLogic and Konda Tech have a licensing agreement in place. (*See*, Konda Decl. at ¶28.)

Dr. Konda, by email (*See*, Dkt. No. 1-1 at p. 1.), was a non-threatening inquiry to QuickLogic whether or not Konda Tech Intellectual Property would be opened-sourced instead of limited to use in QuickLogic's products. *See*, *ABB Inc.*, *supra*, at 635 F.3d 1345, 1346-47. Dr. Konda waited for several weeks before he sent a cease and desist letter only to have QuickLogic defer including Konda Tech Intellectual Property in QuickLogic's plan to open source. (*See*, Dkt. No. 1-17 at pp. 16-17.) Dr. Konda did not impose a deadline to respond. *See*, *Hewlett-Packard Co.*, *supra*, at 587 F.3d 1358, 1362-63. There is no indication that the communications from Dr. Konda have induced Quicklogic to change its behavior. (*See*, Konda Decl. at ¶ 29.) *See*, *Ass'n for Molecular Pathology*, *supra*, at 689 F.3d 1303, 1318

Dr. Konda did not identify any particular patent infringed by QuickLogic or any specific infringing product(s). *See*, *Applera Corp.*, *supra*, at 594 F. Supp. 2d 150, 158-60. Neither did Dr. Konda have any familiarity with the QuickLogic products prior to the present action being filed. (*See*, Konda Decl. at ¶ 30 and mailed a list of Konda patents in Dkt.No. 1-2.) *Prasco*, *supra*, at 537 F.3d at 1334; *Innovative Therapies, Inc.*, *supra*, at 599 F.3d 1377, 1380. Dr. Konda simply emailed a list of Konda Tech patents to QuickLogic for review by QuickLogic, but never specifically identified which patents were alleged t be infringed. (*See*, Dkt. No. 1-1 at p. 1.) *Applera Corp.*, *supra*, at 594 F. Supp. 2d 150, 158-60.

Dr. Konda did not conduct an infringement analysis. (*See*, Konda Decl. at ¶31.) *See*, *SanDisk Corp.*, *supra*, at 480 F.3d 1372, 1374-76. Dr. Konda did not specify any particular claim of a particular patent infringed by QuickLogic. (*See*, Konda Decl. at ¶32.) The claims identified in QuickLogic's Complaint were alleged by QuickLogic's attorneys, not by Dr. Konda. (*See*, Konda Decl. at ¶33.)

Dr. Konda informed Mr. Swenson on multiple occasions that he wanted to meet with an officer of QuickLogic in accordance with the Informal Dispute Resolution procedure set forth in Section 8.7 of 2010 Licensing and Consulting Agreement between Konda Tech and QuickLogic.  Instead, Mr. Swenson sent a proposed Declaratory Judgment complaint to Dr. Konda on June 8, 2021 and continually threatened Dr. Konda that he would file for a Declaratory Judgement from June 8, 2021 until June 16, 2021 in spite of Dr. Konda's requests to meet with an officer of QuickLogic.  The communications initiated by Mr. Swenson on behalf of QuickLogic have the appearance of an attempt to create a controversy in anticipation of filing suit.  *See*, *Innovative Therapies, Inc.*, *supra*, at 599 F.3d 1377, 1380.

For all of the above reasons, QuickLogic has not Therefore, the Court should dismiss QuickLogic's First through Ninth Claims For Relief for "Noninfringement."

**B.    QuickLogic Has Not Established a "Case" or "Controversy" Under Article III of the U.S. Constitution and 28 U.S.C. § 2201(a) Regarding the License Between QuickLogic and Konda Tech.**

As pointed out above, *"*Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121-22 (9th Cir.2010).  *"*A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003).

In the present case, QuickLogic's Tenth Claim For Relief for "Non-Breach of Contract" is not ripe, because QuickLogic repudiated the Informal Dispute Resolution provision in Section 8.7 of the 2010 Licensing and Consulting Agreement which requires that "**an officer of Konda and an officer**

**of QuickLogic shall meet to negotiate and resolve such matters in good faith without resort to formal legal proceedings**." (*See*, Dkt. No. 1-17 at pp. 5-6 (emphasis added).)

Courts have routinely dismissed declaratory judgment actions in cases where the plaintiff and the defendant have not exhausted alternative dispute resolution alternatives prior to the declaratory judgment plaintiff seeking declaratory relief from the court. For example, in *Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters* (E.D. Wash., Apr. 18, 2019, No. 2:17-cv-00250-SMJ) [pp. 14-15] a dispute arose between the City of Everett, Washington and a local of the International Association of Firefighters. The court found that the parties could still reach a final agreement despite their present impasse through mediation and arbitration:

> The Court also agrees with Local 3701 that "[t]his eventuality is so distant and uncertain that this lawsuit falls well short of the immediacy and imminence required to confer subject matter jurisdiction over a suit for declaratory judgment." [citation omitted] "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). "Thus, [the Supreme Court has] repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id*. (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

*Id.* at [p. 16]. Similarly, the court in *Flury v. Marriott Int'l Inc.* (D. Ariz., May 13, 2020, No. CV-19-04642-PHX-JJT) [pp. 6-7] ruled:

> In sum, the parties in this lawsuit have not yet completed the grievance and arbitration process as provided for by the controlling agreement, the CBA. As a matter of ripeness, the issues before the Court are not yet fit for judicial decision, and resolution of this dispute through arbitration—or mediation , if the parties so stipulate—will not subject the parties to undue hardship. Moreover, Mrs. Flury will not be without a remedy if she receives an arbitration award she perceives to be unfair; her claims will presumably then be ripe for adjudication in court. For now, Mrs. Flury's claims are premature, and the Court must dismiss them for lack of ripeness.

In the present case, Defendant Konda Tech's communications sought information from QuickLogic regarding QuickLogic joining certain open source initiatives and attempted to invoke the provision in Section 8.7 of the 2010 Licensing and Consulting Agreement between the companies for

informal dispute resolution discussions between officers of the respective companies. The two companies are parties to a current license agreement, rather than there being any history of disputes between the companies in the 11-year history of the relationship. The Court should dismiss QuickLogic's "Non-Breach of Contract" claim for relief because it is not ripe based on QuickLogic's failure to comply with the mandatory Informal Dispute Resolution procedure set forth in Section 8.7 of the 2010 Licensing and Consulting Agreement between the parties.

**C.    Were the Court to Find a "Case" or "Controversy" Exists, the Court Should Nevertheless Exercise Its Discretion and Dismiss the Present Declaratory Judgment Action.**

Even if there were a case or controversy under Article III, which there is not, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *3M Co. v. Avery Dennison Corp.,* 673 F.3d 1372, 1376 (Fed. Cir. 2012) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995)). Thus,"[t]he Declaratory Judgment Act does not grant litigants an absolute right to a legal determination." *United States v. State of Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985). A court's decision whether to grant declaratory relief is instead "a matter of discretion." *Id*. *See*, *T'Bear v. Forman* (N.D. Cal., Feb. 12, 2020, No. 17-cv-00796-JSC) [pp. 24].

In the present case, Defendant Konda Tech's communications sought information from Plaintiff QuickLogic regarding QuickLogic joining certain open source initiatives and attempted to invoke the provision in Section 8.7 of the 2010 Licensing and Consulting Agreement between the companies for informal discussions between officers of the respective companies. The two companies are parties to a current license agreement, rather than there being any history of patent infringement or other disputes between the companies in the 11-year history of the relationship. In response, QuickLogic engaged a law firm to respond to Konda Tech with demands that Konda Tech document infringement of Konda Tech's patents and violation of the license agreement instead of responding to Konda Tech's requests

for information. QuickLogic's engagement of a law firm to escalate matters between the companies "gives rise to the appearance that the entire exchange was contrived and initiated by the Plaintiff in contemplation of litigation." *Cepheid*, *supra*, at p. 19 (granting motion to dismiss Declaratory Judgment Act action.)

QuickLogic acted in bad faith in refusing to comply with Section 8.7 of the 2010 Licensing and Consulting Agreement between the companies for informal discussions between officers of the respective companies. Therefore the Court should dismiss QuickLogic's First through Tenth Claims For Relief in the judicious exercise of its discretion.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint (Dkt. No. 1) filed by QuickLogic under Fed. R. Civ. P. Rules 12(b)(1) and h(3) for lack of subject matter jurisdiction in that "a case of actual controversy" amongst the parties does not presently exist under Article III, section 2, clause 1 of the U.S. Constitution and 28 U.S.C. § 2201(a) and that QuickLogic bed faith failure to comply with the mandatory Informal Dispute Resolution requirement in Section 8.7 of the 2010 Licensing and Consulting Agreement between the parties. The Court should also rule that this is an exceptional case in view of the bad faith of QuickLogic and award Defendants their attorney's fees and costs.

Dated: August 24, 2021                              /William C. Milks, III/
                                                    William C. Milks, III