UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUICKLOGIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KONDA TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No.  5:21-cv-04657-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 43, 45 |

Defendants Konda Technologies, Inc., and Dr. Venkat Konda move to disqualify Baker Botts LLP as counsel for Plaintiff QuickLogic Corporation. *See* Konda Technologies, Inc. and Venkat Konda's Motion to Disqualify QuickLogic Corporation's Counsel ("Mot. to DQ"), Dkt. No. 45. On June 23, 2022, Plaintiff filed an opposition, to which Defendants filed a reply. *See* QuickLogic Corp.'s Opposition to Defendants' Motion to Disqualify ("Opp. re DQ"), Dkt. No. 50; *see also* Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Disqualify ("Reply re DQ"), Dkt. No. 53.

Plaintiff separately moves to dismiss Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* QuickLogic's Motion to Dismiss ("MTD"), Dkt. No. 43. On June 23, 2022, Defendants filed an opposition, to which Plaintiff filed a reply. *See* Defendants' Opposition to QuickLogic Corporation's Motion to Dismiss ("MTD Opp."), Dkt. No. 51; *see also* QuickLogic Corp.'s Reply in Support of its Motion to Dismiss ("MTD Reply"), Dkt. No. 52. Having considered the record in this case, the Parties' papers, and the relevant law, the Court **DENIES** Defendants' motion to disqualify and **GRANTS in part and DENIES in part**

Plaintiff's motion to dismiss.[1]

## I. BACKGROUND

### A. Dr. Konda's Interactions with Plaintiff's Counsel

On September 3, 2010, and October 5, 2010, respectively, the Parties executed a Mutual Non-Disclosure Agreement ("2010 Mutual NDA") and a Licensing and Consulting Agreement ("2010 Licensing and Consulting Agreement" or the "2010 CLA"). Pursuant to the 2010 Licensing and Consulting Agreement, beginning in September 2010 and continuing through March 2011, Dr. Konda transferred information regarding Konda's intellectual property and work product to QuickLogic's software engineers ("the Project").

According to Dr. Konda, the transfer of technology was implemented based on an SRAM cell-based routing architecture and Konda's intellectual property, know-how, and work product in a project led by Tim Saxe, the Chief Technology Officer ("CTO") of QuickLogic. *See* Venkat Konda's Declaration in Support of Motion to Disqualify ("Konda Decl."), Dkt. No. 45-1. Under the Agreement, "Dr. Sax, QuickLogic software engineers, and QuickLogic hardware engineers gained access to Konda's intellectual property, work product, and proprietary implementation details and technical know-how." Konda Decl. ¶ 4. Dr. Konda completed the Project by the date agreed upon by the Parties and received a project completion incentive bonus from QuickLogic. *Id.* ¶ 5. Dr. Konda contends that he "demonstrated a significant savings with the SRAM cell-based routing architecture." *Id.* ¶ 6.

After the completion of the Project, Brian Faith, QuickLogic's Chief Operating Officer, and Dr. Saxe met with Dr. Konda and exchanged emails and text messages regarding Konda's technology. *Id.* ¶ 7. Dr. Konda alleges that during the ensuing years, from 2010 until 2021, QuickLogic offered to enter a non-exclusive license or exclusive license for additional patents with Konda. *Id.* ¶ 8. In 2017, QuickLogic obtained consulting services from Konda for a

---

[1] On July 11, 2022, the Court found these motions appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). *See* Dkt. No. 58.
Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

2

comparison of "a) Konda Tech's FPGA routing architecture licensed by QuickLogic in 2010, b) FPGA Routing architecture implemented by Flex Logix Technologies, Inc. ("Flex Logix"), which is a competitor to QuickLogic in eFPGA markets, and c) Konda Tech's routing architecture." *Id.* at ¶ 9.

On June 8, 2018, Dr. Konda sent Mr. Faith and Dr. Saxe a text that asked for a reference for a potential licensee. *Id.* ¶ 11. Dr. Konda informed Mr. Faith and Dr. Saxe that he was planning to meet with Flex Logix, a potential licensee, on June 13, 2018. *Id.* ¶ 12. Mr. Faith called Dr. Konda and requested that he cancel the meeting and to fly back to San Jose so that QuickLogic could obtain a license to the additional patents in the Konda Technology Patent Portfolio. *Id.* ¶ 14. Dr. Konda claims that "Mr. Faith told [him] not to meet Flex Logix's attorney [himself] and that [he] should sign up with an attorney to attend [the] meeting." *Id.* ¶ 14. Mr. Faith allegedly said that "he knew a good attorney" and that he would introduce Dr. Konda to the attorney to help "Konda Tech in Konda Tech's patent infringement lawsuit against Flex Logix."[2] *Id.* ¶ 14.

Pursuant to this call, Dr. Konda canceled the meeting and flew back to San Jose to meet with Mr. Faith. *Id.* ¶ 15. During that meeting, Mr. Faith told Dr. Konda that he would make an email introduction to Hopkins Guy, an attorney at Baker Botts LLP and Plaintiff's counsel. *Id.* ¶¶ 15, 16. Dr. Konda spoke with Mr. Guy on June 15, 2018. *Id.* ¶ 17. He then met with Mr. Guy in person on June 20, 2018. *Id.* During that meeting, Mr. Guy inquired about and discussed Konda's portfolio. *Id.* He also inquired about and discussed Konda Tech's patent infringement claims against Flex Logix, namely the statute of limitations for the claim. *Id.* Dr. Konda alleges that during this meeting, Mr. Guy also discussed Konda's status and discussed options and strategies. *Id.* According to Dr. Konda, Mr. Guy never cautioned him not to disclose confidential information or that the information disclosed would be used against him through Mr. Guy's

---

[2] It is unclear when Dr. Konda intended to pursue a patent infringement lawsuit against Flex Logix, that is whether the decision occurred *before* or *after* the described meeting.

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

3

1  representation of QuickLogic. *Id.* ¶¶ 18, 19.

## B. The Scope of this Action

Plaintiff filed this case as a declaratory judgment lawsuit under 28 U.S.C. §§ 1331, 1338, 1367, 2201, & 2202 to resolve certain unsubstantiated claims made by Defendants. Specifically, to resolve whether Plaintiff was infringing Defendants' patents. Plaintiff argues that while it is typical for a patent owner to counterclaim for infringement in response to a declaratory judgment suit, Defendants' counterclaims are so conclusory that they mandate dismissal.

In August 2021, Defendants moved to dismiss Plaintiff's complaint. *See* Dkt. No. 20. Defendants argued that the Court lacked subject-matter jurisdiction in part because Dr. Konda did not "have any familiarity with the QuickLogic products prior to the present action being filed" and "did not conduct an infringement analysis." *Id.* at 15. In support of these facts, Defendants filed two declarations signed by Dr. Konda. *See* Dkt. Nos. 20-1, 29-1. The Court disagreed with Defendants and concluded that subject-matter jurisdiction existed because, "with the filing of [a] case and desist letter . . . , the controversy between the parties was substantial enough to provide jurisdiction for a declaratory relief action." Dkt. No. 34.

Three days after the Court issued its order denying Defendants' motion to dismiss, defense counsel emailed Plaintiff's counsel that "Dr. Konda cannot determine if QuickLogic is infringing any of the patents in the Konda interconnect patent portfolio at this time." Dkt. No. 35-3. Defense counsel proposed delaying the case and engaging in expedited discovery. *Id.* However, less than two weeks later, Defendants filed their Answer and Counterclaims. *See* Answer to Complaint with Jury Demand and Counterclaims ("Answer"), Dkt. No. 35. Defendants allege counterclaims of infringement of the patents identified in Plaintiff's Complaint, plus additional patents. Answer ¶¶ 177–510. Defendants also assert state law claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing; and (3) breach of confidential relationship. Answer ¶¶ 107–76.

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
4

**C. The 2010 Consulting and License Agreement**

On October 5, 2010, the Parties entered the 2010 Consulting and License Agreement. Defendants' counterclaims frequently reference and rely on the 2010 CLA attached to Plaintiff's Complaint. *See* Answer ¶¶ 83–84, 86–88, 90, 92, 99–105. Like the 2010 Mutual NDA, the 2010 CLA contained an integration clause. The 2010 CLA is subject to California law.

The 2010 CLA defines "Konda Intellectual Property" as the "intellectual property listed on Exhibit A to this Agreement." *See* Dkt. No. 1-3 at § 1.1. Exhibit A to the agreement lists several patent applications. *See id.* at Ex. A. The 2010 CLA granted to Plaintiff "a non-exclusive, royalty-free, irrevocable, and world-wide right" license to Konda Intellectual Property:

> **1.2 License Grant.** Subject to payment in full of the one-time, paid-up license fee set forth below, Konda hereby grants to QuickLogic a non-exclusive, royalty-free, irrevocable and world-wide right . . . to reproduce, make derivative works of, publicly perform, publicly display and distribute in any form or medium, whether now known or later developed, and to make, have made, use, import, offer to sell, and sell the Konda Intellectual Property incorporated or used in the programmable logic of QuickLogic products for the purpose of developing and marketing QuickLogic products or otherwise commercializing QuickLogic's technology, but not for the purpose of marketing Konda Intellectual Property separate from QuickLogic products.

*Id.* at § 1.2. The license grant survives the 2010 CLA's "termination or expiration." *Id.* at § 1.4.

In the 2010 CLA, Konda Technologies also promises to "take all steps reasonably necessary to hold QuickLogic's Confidential Information in trust and confidence[.]" *Id.* at § 3.1. The 2010 CLA contains no promises by Plaintiff to keep any of Konda Technologies' information confidential. *Id.*; *see also id.* at §§ 5.2 & 5.3 (assignment and waiver).

Finally, the 2010 CLA contains two important clauses regarding liability. First, it contains a section regarding informal dispute resolution.

> **8.7 Informal Dispute Resolution.** In the event of any dispute or disagreement between the parties hereto either with respect to the interpretation of this Agreement or the performance of any obligations set forth herein, whether in contract, statute, tort such as negligence or otherwise (each a "Dispute"), an officer of Konda and an officer of QuickLogic shall meet to negotiate and resolve such matters in good faith without resort to formal legal proceedings. If

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

5

>the officers are unable to resolve the dispute within 10 business days after referral of the matter to them, then either party shall have the right to institute legal proceedings to seek any remedy available under law or equity.

*Id.* at § 8.7. Second, for disputes regarding the 2010 CLA, "either party's aggregate liability" is limited to "the amounts actually paid to [Konda Technologies] under [the] Agreement." *Id.* at § 7.2. The maximum amount payable to Konda Technologies under the 2010 CLA was $260,000. The 2010 CLA excludes "special, non-compensatory, punitive, incidental, consequential, exemplary, or other indirect damages of any kind or nature . . . , regardless of the form of action . . . , incurred by the other party and arising out of or in connection with [the] Agreement." *Id.* at § 7.1.

## II. LEGAL STANDARDS

### A. Motion to Disqualify and Implied Waiver

The decision whether to disqualify counsel is committed to the discretion of the district court. *See Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976). State law is applied in determining matters of disqualification. *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). Generally, outright disqualification is disfavored because it may drastically affect several important interests—a client's right to choose counsel, an attorney's interest in representing a client, the financial burden on a client who must replace disqualified counsel, and the possibility that the disqualification motion is merely pursued for tactical reasons. *Concat LP v. Unilever, PLC*, 350 F. Supp. 3d 796, 814 (N.D. Cal. 2004).

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). "Delay is significant not only from the perspective of prejudice to the nonmoving party, it is also an indication that the alleged breach of confidentiality was not seen as serious or substantial by the moving party." *Liberty Nat'l Enter., L.P. v. Chi. Title Ins. Co.*, 194 Cal. App. 4th 839, 847 (2011). If the opposing party "offers prima facie evidence of an

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
6

unreasonable delay by the former client in making a motion and resulting prejudice to the current client," the burden "shifts back to the party seeking disqualification to justify the delay." *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1298 (1987). That party should address "how long he has known of the potential conflict; whether he has been represented by counsel since he has known of the potential conflict; whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and whether an earlier motion to disqualify would have been inappropriate or futile, and why." *Id.* at 1309.

### B. California Rule of Professional Conduct 1.18

Pursuant to Civil Local Rule 11, every attorney practicing before this court must "comply with the standards of professional conduct required of members of the State Bar of California." N.D. Cal. Civ. L.R. 11-4(a)(1). Under California Rule of Professional Conduct 1.18, an attorney has a continued duty of confidentiality and loyalty to a potential client. A "prospective client" is a person who consults a lawyer "for the purpose of retaining the lawyer or securing legal advice or advice from the lawyer in the lawyer's professional capacity." Cal. R. Prof. Conduct 1.18(a). However, not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who "communicates information unilaterally to a lawyer, without reasonable expectation that the lawyer is willing to discuss the possibility of forming a lawyer-client relationship or provide legal advice is not a 'prospective client.'" *Id.* cmt. 2. Further, Rule 1.18 only prohibits a material adverse representation if the lawyer received information from the prospective client that is protected by Business and Professions Code § 6068(e). *Id.* 1.18(c).

Business and Professions Code § 6068(e) covers "any information obtained by the lawyer during the professional relationship, or relating to the representation, which the client has requested to be inviolate or the disclosure of which might be embarrassing or detrimental to the client." State Bar of California, Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 2016-195 (cleaned up). If the allegedly confidential information disclosed "becomes a matter of public record or is disclosed to third parties, the disqualification movant

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
7

1  cannot rely on such disclosures as confidential information." *Faraday&Future, Inc. v. EVelozcity,*
2  *Inc.*, 2018 WL 4849704, at *7 (C.D. Cal. May 30, 2018).

### C. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  These standards apply to both allegations in a complaint and in counterclaims.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although "a court must accept as true all of the allegations contained in a complaint[,]" "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "[T]o be entitled to [a] presumption of truth, allegations in a . . . counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216.  Such factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

"[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the [patent] claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "A plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352 (citing *Nalco Co v. Chem-Mod, LLC*, 883 F.3d 1337,

1350 (Fed. Cir. 2018)). However, a plausible claim requires at least some allegations regarding how an accused product satisfies certain claim limitations. *See id.* at 1355 ("While Bot M8 points to different storage components in the allegedly infringing devices, it never says which one or ones satisfy the mutual authentication limitation.").

## III. DISCUSSION

### A. Defendants' Motion to Disqualify Counsel

To the extent a conflict exists, Defendants have waived their right to pursue it. A chronology of this case is helpful. On May 5, 2021, Baker Botts sent a letter informing Defendants that Baker Botts and Mr. Guy were representing QuickLogic in this matter. *See* Dkt 1-4. Subsequently, on June 16, 2021, Plaintiff filed suit, listing "G. Hopkins Guy III" as counsel of record on its Complaint. *See* Dkt. No.1. Thereafter, in August 2021, Defendants moved to dismiss Plaintiff's actions. Mr. Guy, among other attorneys from Baker Botts, defended Plaintiff from dismissal. *See* Dkt. No. 27. It was not until nearly seven months into litigation, and after a failed motion to dismiss, that Defendants made any suggestion that grounds for disqualification existed. *See* Dkt. No. 39 (filed February 8, 2022). This delay is unreasonable as a matter of law. *See, e.g.*, *Skyy Spirits, LLC v. Rubyy, LLC*, 2009 WL 3762418, at *4 (N.D. Cal. Nov. 9, 2009) ("Rubyy's *eight-month delay*, when considered in conjunction with the specific circumstances of this action—including the nature of the previous representation, the prejudice to Skyy, and Rubyy's willingness to deal with Attorney Kinnear in settlement negotiations—weighs heavily against disqualification." (emphasis added)); *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *6 (N.D. Cal. Mar. 31, 2011) (finding a four month delay unreasonable); *Chartwell Staffing Servs. Inc. v. Am. Int'l Indus., Inc.*, 2021 WL5927845, at *3 (C.D. Cal. Aug. 10, 2021) (finding a three-month delay unreasonable); *Finmeccanica S.p.A. v. Gen. Motors Corp.*, 2008 WL 11340060, at *3 (C.D. Cal. Apr. 29, 2008) (finding a six-month delay unreasonable).

In the instant action, Defendants' delay is significant. As recounted above, much has happened since Baker Botts, and specifically Mr. Guy, began representing QuickLogic. At no

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
9

1    time during the initial filing of this action or the earlier motions to dismiss did Defendants express

2    a concern about a possible conflict with Baker Botts' representation of QuickLogic. Baker Botts

3    has put time and effort into defending Plaintiff against a motion to dismiss and has developed a

4    strong understanding of the facts at hand. Disqualifying Baker Botts at this point would prejudice

5    QuickLogic.

6        Because an attempt to disqualify the opposing attorney is often tactically motivated and

7    disruptive to the litigation process, disqualification is a drastic measure that is generally

8    disfavored. *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal.

9    2003). Given the unlikelihood that an actual breach of confidentiality occured,[3] the strategic

10   timing of the motion (filed just days after Defendants' motion to dismiss was denied), and the

11   delay in filing, Defendants' motion appears to be motivated by a desire to derail the ongoing

12   litigation. It is for this reason that motions for disqualification are "subjected to a particularly

13   strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045,

14   1050 (9th Cir. 1985). The party seeking disqualification bears a "heavy burden," which

15   Defendants have failed to meet. *See City & Cnty. of S.F. v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 851

16   (2006). For these reasons, Defendants' motion to disqualify is **DENIED.**

17                         **B. Plaintiff's Motion to Dismiss**

18       Plaintiff moves to dismiss Defendants' counterclaims under Federal Rule of Civil

19   Procedure 12(b)(6). Plaintiff first moves to dismiss Defendants' patent infringement

20   counterclaims (causes of action four through seventeen). Plaintiff next moves to dismiss

---

[3] The Court has serious doubts about whether Dr. Konda qualified as a prospective client within the meaning of Rule 1.18. From the evidence submitted by Dr. Konda, it appears that Mr. Guy consulted with Dr. Konda to conduct diligence on Konda Technologies to help QuickLogic determine whether it should buy more patents from Konda. Indeed, the text messages provided by Dr. Konda establish that he followed-up with QuickLogic over a period of years to see if QuickLogic would buy more patents. When QuickLogic finally agreed to meet with Dr. Konda, it appears that he was put in touch with Mr. Guy so that QuickLogic could evaluate the potential liabilities of Konda Technology. Moreover, all the information allegedly disclosed to Mr. Guy is in the public domain. *See Konda Technologies*, http://kondatech.com/index.php/konda-technologies-will-never-license-konda-ip-to-flex-logix/ (last visited July 22, 2022).

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

Defendants' remaining claims for breach of the 2010 CLA (cause of action one), breach of the covenant of good faith and fair dealing (cause of action two), and breach of confidential relationship (cause of action three). Rather than defend the counterclaims pled in their Answer, Defendants ask the Court to consider a new declaration that is attached to their opposition. *See* MTD Opp. at 4 ("Accordingly, this Court should deny QuickLogic's Motion and grant Konda *leave to amend* its First Amended Answer and Counterclaims . . . ." (emphasis added)). Even assuming this is a proper way to pursue amendment, Defendants have largely demonstrated that leave to amend would be futile.

### 1. Patent Infringement Counterclaims (Causes of Action 4–17)

Plaintiff argues that Defendants' patent infringement counterclaims fail to include any allegations that map the claim language to the accused products. Instead, the counterclaims "simply restate the claim language alongside bald assertions of infringement." MTD at 9. For example, the Answer alleges:

> 181. On information and belief, the Accused FPGA Devices include *a programmable integrated circuit comprising a plurality of programmable logic blocks* and *a network* such that QuickLogic infringes at least claim 1 of the '322 Patent for at least the following reasons:
>
> 182. QuickLogic's Accused FPGA Devices have *a programmable integrated circuit comprising a plurality of programmable logic blocks* and *a network*.
>
> 183. On information and belief, the Accused FPGA Devices have a *plurality of programmable logic blocks* and *a network*, and said each plurality of programmable logic blocks comprising a plurality of inlet links and a plurality of outlet links.

Answer ¶¶ 181–83 (emphasis added). As Plaintiff notes, these allegations simply parrot the claim language. Defendants use an identical approach for all 14 patents. *See* Answer ¶¶ 181–92, 199–214, 221–38, 245–79, 286–307, 314–29, 336–56, 336–56, 363–97, 404–14, 421–33, 440–54, 461–74, 481–91, 498–508. Indeed, Defendants make no attempt to compare any of the claim limitations to the accused products and instead use conclusory allegations like "on information and belief" to demonstrate infringement. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co.*

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

11

1  *Ltd. (US) Research Inst.*, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020) ("The inclusion of
2  [the phrase 'information and belief'] creates an 'inference that [the claimant] likely lacks
3  knowledge of the underlying facts to support the assertion[s], and is instead engaging in
4  speculation to an undue degree.'" (quoting *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2
5  (N.D. Cal. Mar. 19, 2014))).[4]

The amended answer does not remedy these deficiencies. Instead, the answer continues to recite claim elements and corresponding conclusions without supporting factual allegations. *See* Dkt. No. 51, Gaustad Decl., Ex. A at 36–37. For this reason, the Court determines that amendment would be futile and **GRANTS** Plaintiff's motion to dismiss counterclaims four through seventeen without leave to amend.[5]

### 2. Breach of the 2010 CLA (Cause of Action 1)

Defendants' Counterclaim Cause of Action One alleges that Plaintiff breached both the license and the informal dispute resolution clause of the 2010 CLA. Answer ¶¶ 89, 90, 102, 104, 106, 111–18, 120–22. Defendants amended answer now challenges:

> QuickLogic's alleged use of "Konda Intellectual Property (e.g. then pending patents), work product, and proprietary information details and technical know-how licensed by Konda to QuickLogic in open source code through OSFPGA separate from QuickLogic products in violation of the license granted by Konda to QuickLogic. Konda has been harmed because Konda has been unsuccessful in licensing to other FPGA vendors because of QuickLogic's open sourcing of Konda Intellectual Property (e.g., then pending patents), work product, and proprietary implementation details and technical know-how in OSFPGA repositories separate from QuickLogic products and without Konda's authorization to do so.

Dkt. No. 51, Gaustad Decl., Ex. A ¶ 150. Plaintiff argues that these allegations remain deficient

---

[4] As noted, Defendants represented that they could not determine whether Plaintiff infringed any of Konda's patents and that they "did not conduct an infringement analysis." *See supra*. This suggests that infringement was either not occurring or was difficult to locate. Either way, it supports dismissal as it seems likely that no grounds for infringement exist.

[5] Because Defendants fail to sufficiently plead direct infringement, their allegations of induced infringement and willful infringement necessarily fail. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1143 (N.D. Cal. 2019).

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
12

1   because: (1) Konda Intellectual Property is limited to patents, (2) Defendants' allegations are
2   conclusory and speculative, and (3) the 2010 CLA unambiguously excludes lost profits or loss of
3   revenue from the scope of alleged damages.
4         The Court agrees that the 2010 CLA license is limited to spatents, and that it does not
5   include Defendants' "work product, and proprietary information details and technical know-how."
6   The license is limited to "Konda Intellectual Property," which is defined as the various patent
7   applications identified in Exhibit A of the agreement. *See* Dkt. No. 1-3 at Ex. A (listing ten
8   publicly filed applications). These patents are a matter of public record. *See Markman v.*
9   *Westview Instruments, Inc.*, 52 F.3d 967, 987 (Fed. Cir. 1995). It is implausible to say that
10  Defendants were harmed by Plaintiff's submission to a third party of already-public information.
11  *See generally Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 661 (S.D.N.Y. 2015).
12        Further, it is unclear from this allegation how Plaintiff's alleged use of Defendants'
13  intellectual property, *i.e.*, Konda's patents, work product and proprietary information, prevented
14  Defendants from licensing their patents. There are no allegations about how or why Plaintiff's
15  "open sourcing" of Defendants' product has harmed Defendants, or why Plaintiff's use would
16  prevent Defendants from licensing to others.[6] *See Rudgayzer v. Yahoo! Inc.*, 2012 WL 5471149,
17  at *6 (N.D. Cal. Nov. 9, 2012) ("A claim for nominal damage and speculative harm, without a
18  showing of actual damages, does not suffice.").
19        Additionally, the 2010 CLA bars Defendants' claim that Plaintiff's breach caused them
20  lost profits or loss of revenue. Pursuant to the agreement, neither party is liable for "lost profits
21  and lost revenue." Dkt. No. 1-3 at § 7.1. Because the agreement is unambiguous on this point,
22  these allegations fail as a matter of law. *See Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063,
23  1084 (N.D. Cal. 2012) ("A court may resolve contractual claims on a motion to dismiss if the
24  terms of the contract are unambiguous." (citations omitted)).

---

[6] Notably, the client identified is Flex Logix. Defendants' website publicly swears to never license to Flex Logix. It is thus unclear how Defendants could show harm flowing from Plaintiff's alleged wrongful conduct.

1    Finally, Defendants allege that Plaintiff breached the informal dispute resolution clause of
2    the 2010 CLA.  Plaintiff does not seem to dispute that they violated this clause.  Instead, Plaintiff
3    argues that the violation did not result in harm.  Alternatively, Plaintiff argues that Defendants
4    cannot demand attorneys' fees under this clause.  The Court cannot decide this on the current
5    record, especially when there seems to be no dispute that this clause was violated.  The Court will
6    allow Defendants leave to amend this counterclaim to provide more detail about the breach of this
7    clause and the harm that it caused.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).
8    Defendants should be specific about what the clause requires, how Plaintiff violated the clause,
9    and the harm caused by the violation.

### 3. Breach of the Covenant of Good Faith and Fair Dealing (Cause of Action 2)

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citing *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)).  The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).  However, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.*  Thus, to the extent a plaintiff seeks to impose limits "beyond those to which the parties actually agreed, the [implied covenant] claim is invalid.  To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id.* at 352 (emphasis in original).  "The central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract." *Lamke v. Sunstate Equipment Co., LLC.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). Nevertheless, a plaintiff may bring implied covenant claim where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits.  *See Guz*, 24 Cal. 4th at 353 n.18 (acknowledging that "the covenant might be violated if termination of an at-will employee was a

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS
14

mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled . . . .").

It is well established that "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992). "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–84, 689–90 (1988)). "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Foley*, 47 Cal. 3d at 690.

Here, Defendants allege that Plaintiff breached the implied covenant of good faith and fair dealing because of "the bad faith failure by [Plaintiff] to expand the patent license agreement with [Defendants] as promised, and thus deprived Konda entering into a licensing agreement with Flex Logix." MTD Opp. at 11. Problematically, the 2010 CLA contains no agreement to expand the Parties' patent license agreement. Defendants' breach of covenant theory thus fails because the 2010 CLA does not reach the charged conduct. Because this is Defendants' second attempt to replead facts that show a breach of the covenant of fair dealing, and because this claim fails as a matter of law, the Court declines to allow leave to amend.[7]

---

[7] To the extent, Defendants preserve their breach of confidence claim, Defendants continue to fail to allege that Plaintiff disclosed or used Defendants' confidential and novel claim information. Further, a breach of confidence claim must be based on an implied obligation or contract, not an express contract. *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *8 (N.D. Cal. Dec. 19, 2019). Because Defendants' breach of confidence claim appears to be based on an express contract, it fails. To the extent Defendants argue the claim is based on an implied obligation or contract, such allegations are absent from the counterclaims.

Finally, to the extent Defendants rely on the 2010 Mutual NDA, this contract expired September 3, 2017. MTD Reply at 13. Defendants allege that they transferred material to Plaintiff between September 2010 and March 2012, and that Plaintiff transferred that material to the Open-Source FPGA Foundation ("OSFPGA"). *See* Dkt. No. 34 ¶¶ 160–61. However, Plaintiff did not help found the OSFPGA until April 15, 2021, more than three years after the confidentiality obligations

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

15

### 4. Breach of Confidential Relationship (Cause of Action 3)

A confidential relationship claim under California law is "an idea, whether or not protectable, [wa]s offered to another in confidence, and [wa]s voluntarily received by the offeree in confidence with the understanding that it [wa]s not to be disclosed to others, and [wa]s not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990) (quoting *Faris v. Enberg*, 97 Cal. App. 3d 309, 323 (1979)). To prevail on a breach of confidential relationship claim, a party must show that the parties were in a confidential relationship, which has the following "'essential elements'":

> 1) The vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself.

*Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1161 (2005) (quoting *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 272 (2003)). "[V]ulnerability 'is the necessary predicate of a confidential relation,' and 'the law treats [it] as absolutely essential. . . .'" *Id.* (quoting *Richelle L.*, 106 Cal. App. 4th at 273). "'[V]ulnerability . . . usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity.'" *Id.* (quoting *Richelle L.*, 106 Cal. App. 4th at 273).

Defendants have failed to allege any facts indicating vulnerability. On the contrary, the facts alleged demonstrate that the Parties were engaged in arms-length business negotiations. There are no facts that demonstrate that Dr. Konda's age, mental status, or education level rendered him incapacitated. For this reason, Defendants' breach of confidence claim fails. Because this is Defendants' second attempt to replead facts that show a breach of confidential relationship, the Court finds that leave to amend would be futile and dismisses this counterclaim with prejudice.

---

imposed by the mutual NDA expired. *See* MTD Reply at 13–14. Accordingly, the 2010 Mutual NDA cannot form the basis of any breach of contract or confidentiality claim.

Case No.: 5:21-cv-04657-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

16

### IV. CONCLUSION

Defendants' motion to disqualify Plaintiff's counsel is **DENIED**. Plaintiff's motion to dismiss Defendants' counterclaims is **GRANTED in part and DENIED in part**. Defendants may amend their breach of contract counterclaim, as it relates to their claim that Plaintiff breached the informal dispute resolution clause. Should Defendants choose to file an amended answer and counterclaim, they must do so by September 1, 2022. Failure to do so, or failure to cure the deficiencies addressed in this Order, will result in dismissal of Defendants' remaining counterclaim with prejudice. Defendants may not add new counterclaims or parties, without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: August 2, 2022

EDWARD J. DAVILA
United States District Judge