G. HOPKINS GUY (State Bar No. 124811)
hop.guy@bakerbotts.com
JOHN F. GAUSTAD (State Bar No. 279893)
john.gaustad@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Bldg. One Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

SARAH J. GUSKE (State Bar No. 232467)
sarah.guske@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Counsel for Plaintiff QuickLogic Corporation.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| QUICKLOGIC CORPORATION, *Plaintiff and Counter-Defendant*, v. KONDA TECHNOLOGIES, INC. AND VENKAT KONDA, *Defendants and Counter-Plaintiffs*. | Case No. 21-cv-04657-EJD **QUICKLOGIC CORP.'S MOTION FOR ATTORNEYS' FEES** Judge: Hon. Edward J. Davila Date: October 5, 2023 Time: 9:00 a.m. Courtroom: 4 – 5th Floor |

BAKER BOTTS L.L.P.

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................... 1

STATEMENT OF RELIEF REQUESTED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF ISSUES ........................................................................ 2

III.    FACTUAL BACKGROUND ..................................................................... 2

    A.      Defendants' Pre-Suit Threats and Allegations ........................... 2

    B.      Representations Made by Defendants and Milks in Support of Defendants' First Motion to Dismiss ......................................... 3

    C.      Defendants' Answer and Counterclaims, and Motion to Disqualify QuickLogic's Counsel .............................................. 4

    D.      QuickLogic's Motion for Judgment on the Pleadings, Milks' Attempt to Withdraw, Tollefson, Dahlgren, Brahmbhatt's Appearances, and Defendants' Second Motion to Dismiss ................................... 7

IV.     LEGAL STANDARDS ............................................................................. 8

    A.      The Court's Jurisdiction Over Award and Enforcement of Attorneys' Fees ........................................................................... 8

    B.      Attorneys' Fees Under 35 U.S.C. § 285 ..................................... 8

    C.      Attorneys' Fees Under 28 U.S.C. § 1927 ................................... 9

    D.      Attorneys' Fees Under the Court's Inherent Authority .............. 9

    E.      Joint and Several Liability for Attorneys' Fees Awards ............ 9

    F.      Requisite Connection Between Fees and Sanctionable Conduct .............. 9

    G.      Standard for Reasonable Fees ................................................... 10

V.      ARGUMENT .......................................................................................... 11

    A.      Defendants' Conduct Is Sanctionable Under 35 U.S.C. § 285 ................. 11

    B.      Milks' Conduct Is Sanctionable Under 35 U.S.C. §285 and 28 U.S.C. § 1927 .................................................................... 14

    C.      Both Defendants' and Milks' Conduct Is Also Sanctionable Under the Court's Inherent Authority .................................... 15

    D.      Tollefson, Dahlgren, and Brahmbhatt' Conduct Is Also Sanctionable Under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's Inherent

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Authority ..................................................................................................... 15

E.   QuickLogic Is Entitled to Attorneys' Fees from the Beginning of This
     Matter ....................................................................................................... 16

F.   The Amount of Fees Sought By QuickLogic Is Reasonable ..................... 17

G.   The Court Should Retain Jurisdiction Over Supplemental Fee Requests
     and the Enforcement of Its Fee Orders...................................................... 19

VI.   CONCLUSION ................................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Automated Bus. Cos. v. NEC Am., Inc.*,
  202 F.3d 1353 (Fed. Cir. 2000) ........................................................................................... 11

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) ................................................................................. 9, 14, 15

*Blixseth v. Yellowstone Mountain Club, LLC*,
  854 F.3d 626 (9th Cir. 2017) .......................................................................................... 10, 19

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .............................................................................................................. 8

*Fed. Sav. & Loan Ins. Corp. v. Ferrante*,
  364 F.3d 1037 (9th Cir.2004) ............................................................................................... 8

*Daniels-Hall v. Nat'l Educ. Assoc.*,
  629 F.3d 992 (9th Cir. 2010) ............................................................................................... 12

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ........................................................................................... 15

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ............................................................................................ 8, 9

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) .............................................................................. 10, 11, 16–17

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................ 10

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ................................................................................. 8, 14, 19

*In re Itel Sec. Litig.*,
  791 F.2d 672 (9th Cir. 1986) ................................................................................. 8, 14, 19

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) .................................................................................................. 9

*In re Personalweb Techs., LLC Patent Litig.*,
  No. 18-md-02834-BLF, 2021 WL 796356 (N.D. Cal. Mar. 2, 2021) ........................ 8, 9, 10, 19

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. Jan. 25, 2017) .................................................................. 15

*K.C. ex rel. Erica C. v. Torlakson*,
    762 F.3d 963 (9th Cir.2014) ........................................................................................8

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ......................................................................10

*Law Offices of Bruce Altschuld v. Wilson*,
    632 F. App'x 321 (9th Cir. 2015) ..............................................................................8

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ...........................................................................11, 18

*Maxwell v. Kaylor*,
    No. 18-cv-06121-NC, 2022 WL 1123199 (N.D. Cal. Mar. 16, 2022) ..................8, 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ...................................................................................8, 9, 11, 14

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ..................................................................................................10

*Phonometrics, Inc. v. ITT Sheraton Corp.*,
    64 F. App'x 219 (Fed. Cir. 2003) ............................................................................14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012) ...............................................................................15

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ....................................................................................................9

*Rohm & Haas Co. v. Crystal Chem. Co.*,
    736 F.2d 688 (Fed. Cir. 1984) ..................................................................................15

*Smart Wearable Techs. Inc. v. Fitbit Inc.*,
    No. 17-cv-05068-VC, 2018 WL 3201751 (N.D. Cal. June 27, 2018) ...................9, 14

*Takeda Chem. Indus., Ltd., v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ...............................................................................11

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ..................................................................................18

**STATUTES**

35 U.S.C. § 285 ............................................................................................... *passim*

28 U.S.C. § 1927 ............................................................................................. *passim*

28 U.S.C. § 1927 ...................................................................................1, 2, 9, 14

**RULES**

Federal Rule of Civil Procedure 12 ................................................................................................ 12

Federal Rule of Civil Procedure 54 .................................................................................................. 1

Civil Local Rule 54-5 ........................................................................................................................ 1

**OTHER AUTHORITIES**

S. Rep. No. 1503, 79th Cong., 2d Sess. (1946) ............................................................................. 15

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 5, 2023 at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiff and Counter-Defendant QuickLogic Corporation ("QuickLogic") moves the Court pursuant to Federal Rule of Civil Procedure 54(d)(2) and Civil L.R. 54-5 to grant it attorneys' fees against (1) Defendants Konda Technologies Inc. and Venkat Konda ("Defendants") pursuant to 35 U.S.C. § 285 and/or the Court's inherent power, and (2) Defendants' counsel William C. Milks, III ("Milks"), Brian Tollefson ("Tollefson"), Derek Dahlgren ("Dahlgren"), and Deepali Brahmbhatt ("Brahmbhatt") (collectively, "Defendants' Counsel") pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power. This motion is based on this Notice of Motion, the attached memorandum of points and authorities in support thereof, the pleadings and documents on file in this case, and such other evidence and argument as may be presented at the hearing on this motion.

**STATEMENT OF RELIEF REQUESTED**

QuickLogic respectfully requests that the Court award it $471,382.18 in attorneys' fees against (1) Defendants pursuant to 35 U.S.C. § 285 and/or the Court's inherent power and (2) Defendants' Counsel pursuant to 35 U.S.C. § 285, 35 U.S.C. § 1927, and/or the Court's inherent power. QuickLogic also respectfully requests that the Court hold Defendants and Defendants' Counsel jointly and severally liable for any award of attorneys' fees. QuickLogic also respectfully requests that the Court retain jurisdiction to (1) adjust the amount of attorneys' fees awarded based on future events and determinations in this case (including, for example, the attorneys' fees incurred by QuickLogic in preparing and pursuing this motion, along with attorneys' fees incurred by QuickLogic on appeal) and (2) enforce the payment of fees.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendants' and Defendants' Counsels' bad-faith conduct leading up to and during this case have unnecessarily wasted both QuickLogic's and the Court's resources. QuickLogic filed its

Complaint solely in response to admittedly baseless accusations from Defendants and Milks[1]. After QuickLogic filed its Complaint, Defendants and Milks took self-conflicting positions, shifting to whatever strategy they deemed necessary in the moment to keep this their meritless claims alive. They even filed a baseless disqualification motion in the hopes of prying QuickLogic from its chosen counsel and to gain leverage in its demands to QuickLogic. After the Court dismissed Defendants' counterclaims with prejudice and it became apparent that Defendants would lose this case, Tollefson, Dahlgren, and Brahmbhatt appeared and continued litigating Defendants' frivolous claims. QuickLogic has thus far spent over two years and $471,382.18 defending itself against Defendants' and Defendants' Counsel's baseless allegations and bad-faith misconduct, and respectfully requests that the Court take all steps necessary to QuickLogic whole and deter future parties and their counsel from engaging in such chicanery in the future.

## II.   STATEMENT OF ISSUES

1.   Whether the Court should grant attorneys' fees against Defendants pursuant to 35 U.S.C. § 285 and/or the Court's inherent power.

2.   Whether the Court should grant attorneys' fees against Defendants' Counsel pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's inherent power.

3.   Whether the Court should grant QuickLogic $471,382.18 in attorneys' fees.

4.   Whether the Court should hold Defendants and Defendants' Counsel jointly and severally liable for any attorneys' fees award.

5.   Whether the Court should retain jurisdiction to (1) adjust the amount of attorneys' fees awarded based on future events and determinations in this case and (2) enforce the payment of fees.

## III.   FACTUAL BACKGROUND

### A.   Defendants' Pre-Suit Threats and Allegations

On April 30, 2021, Defendants e-mailed QuickLogic, asking it to "confirm" that it "d[id] not violate the licensing and consulting agreement signed in September 2010 by QuickLogic

---

[1] See infra, § V.B.

Corporation and Konda Technologies" ("2010 CLA"). Dkt. 1-1 at 1–2. Less than an hour later, QuickLogic confirmed that there had been no breach of the 2010 CLA, informing Defendants that QuickLogic "did not commercialize the architecture from your work" and that QuickLogic had "implemented a different one." *Id.* at 1. Defendants responded on May 3, 2021, with a lengthy e-mail that misrepresented QuickLogic's response, falsely alleging that QuickLogic had represented that it was "putting QuickLogic's FPGA interconnect" into open source code, that "QuickLogic's FGPA interconnect architecture in its products is based on the patents licensed by QuickLogic from Konda Technologies," concluding that if QuickLogic did not respond within four days, "that means QuickLogic agrees with all [Defendants'] statements in this email. *Id.* at 1.

QuickLogic's counsel informed Defendants two days later that they represented QuickLogic in this matter. Dkt. 1-4. Defendants then sent QuickLogic a cease-and-desist letter on May 20, 2021, requesting that QuickLogic "**CEASE AND DESIST**" (1) "[u]nauthorized use or induce to use Konda Technologies FPGA Interconnect Patent Portfolio[,]" and (2) "[v]iolation of the [2010 CLA]." Dkt. 1-5. Defendants threatened QuickLogic that "fail[ure] to comply" would result in "the filing of a lawsuit . . . ." *Id.* at 2. Parts of this letter were written in the third person, indicating that Defendants had not drafted it themselves. *See id.* (referring to Defendant "Venkat" Konda, who signed the letter as Founder/CEO of co-Defendant Konda Technologies). QuickLogic's counsel thereafter responded to Defendants' cease-and-desist letter on May 26, 2021, noting that Defendants had failed to identify any basis for its claims and that its claims were indeed baseless. Dkt. 1-6.

Rather than provide any bases for its claims, Defendants complained that they had not received QuickLogic's May 26, 2021 letter via certified mail, despite admitting receiving that same letter via e-mail. Dkt. 1-17 at 15. QuickLogic then spent several weeks attempting to meet and confer with Defendants to determine any basis for their claims, to no avail. *See id.* at 1–14. This left QuickLogic with no choice but to file its Complaint for Declaratory Judgment of Noninfringement and Non-Breach of Contract. *See* Dkt. 1.

**B. Representations Made by Defendants and Milks in Support of Defendants' First Motion to Dismiss**

Milks formally appeared in the case on August 24, 2021. *See* Dkt. 18. The next day, rather

BAKER BOTTS L.L.P.

than answering the Complaint, Defendants filed a first motion to dismiss for lack of subject-matter jurisdiction. Dkt. 19. Defendants argued that no "case of actual controversy" existed between the parties. *E.g.*, *id.* at 10:5–6 & 14:17–19. Defendants' motion to dismiss was based in part on several representations made by Defendants:

- "Dr. Konda did not identify any particular patent infringed by QuickLogic or any specific infringing product(s)." *Id.* at 15:11–13 (case citation omitted).

- "Neither did Dr. Konda have any familiarity with the QuickLogic products prior to the present action being filed." *Id.* at 15:13–15 (citing Dkt. 19-1, ¶ 30 (case citations omitted).

- "Dr. Konda did not conduct an infringement analysis." *Id.* at 15:21–22 (citing Dkt. 19-1, ¶ 31) (case citations omitted).

Milks signed the first motion to dismiss. *Id.* at 19. Defendant Venkat Konda submitted a declaration declaring the facts described above under penalty of perjury. Dkt. 19-1, ¶¶ 30 & 31.

QuickLogic opposed the first motion to dismiss (Dkt. 27), and Defendants filed their reply on September 15, 2021 (Dkt. 29). Defendants' reply repeated the facts specifically identified above nearly verbatim. *See* Dkt. 29 at 12:9–21. Milks signed the reply. *Id.* at 16. Defendant Venkat Konda submitted a second declaration, again declaring the facts described above under penalty of perjury. Dkt. 29-1, ¶¶ 40 & 41.

The Court denied Defendants' first motion to dismiss on January 3, 2022, finding that "substantial controversy exists between the parties and therefore that there is subject matter jurisdiction for the declaratory relief action" because Defendants' "sending of a cease and desist letter constitute[d] pre-suit notice for an imminent lawsuit." Dkt. 34 at 19–22.

**C.**  **Defendants' Answer and Counterclaims, and Motion to Disqualify QuickLogic's Counsel**

On January 10, 2022—a mere week after the Court denied Defendants' first motion to dismiss—Defendants *again* reversed course, sending QuickLogic a letter alleging that "QuickLogic put QuickLogic code developed with Konda Intellectual Property in OSFPGA repositories without Konda's permission to do so[,]" resulting in a breach the 2010 CLA and a revocation of the patent

BAKER BOTTS L.L.P.

license contained therein. Dkt. 35-3, Ex. S. Yet, one week later on January 17, 2022, Milks sent QuickLogic's attorneys an e-mail representing that "Dr. Konda cannot determine if QuickLogic is infringing any of the patents in the Konda interconnect patent portfolio at this time." *Id.*, Ex. R at 2. QuickLogic's attorneys put Defendants and Milks that they were making "contrary representations." *Id.* at 1.

On January 19, 2022, Defendants filed an Answer and Counterclaims. Dkt. 35. In its Answer, Defendants claimed that they did "not have sufficient information to admit or deny" QuickLogic's declaratory judgment claims for non-breach of contract and non-infringement of patents. *See id.*, ¶¶ 24–80. Yet, Defendants filed a plainly inconsistent breach of contract counterclaim and patent infringement counterclaims that mirrored many of QuickLogic's declaratory judgment claims. *See id.*, ¶¶ 107–27 & 177–416. Thus, Defendants and their counsel had now filed multiple documents that were internally inconsistent and therefore necessarily contained false representations and were inconsistent with one another and therefore necessarily contained false representations. Defendants also asserted additional state-law counterclaims based on QuickLogic's alleged breach of the 2010 CLA (*see id.*, ¶¶ 128–76) and counterclaims for alleged infringement of additional patents (*see id.*, ¶¶ 417–510). Defendants' counterclaims contained only conclusory allegations of harm. *See id.*, ¶¶ 125, 150, 173. Milks signed Defendants' Answer and Counterclaims. *Id.* at 77.

QuickLogic filed a motion on to dismiss Defendants' counterclaims on February 9, 2022 because they failed to state claims upon which relief could be granted. Dkt. 43. Defendants filed an opposition on June 23, 2022, claiming based only on attorney argument that "[s]ince the filing of Konda's original counterclaims on January 18, 2022, Konda has conducted a patent infringement analysis based on data regarding the development of QuickLogic products." Dkt. 51 at 5:19–20; *see also* Dkt. 51-1 (Konda Declaration containing no such allegation). Yet, despite this representation, Defendants submitted with their opposition a proposed amended answer and counterclaims that failed to offer any comparison of QuickLogic's products to the claims of any of Defendants' patents. *See* Dkt. 51-4, ¶¶ 208–541; *see also* Dkt. 52-2 (redline comparing Defendants' Answer and Counterclaims to its proposed amendments). Defendants also claimed that they had been harmed by QuickLogic because they were unable to enter into a license agreement with another company

Baker Botts L.L.P.

(FlexLogix) *E.g.*, Dkt. 51-4, ¶ 182. Dr. Konda submitted a declaration declaring this alleged harm as fact under penalty of perjury. *E.g.*, Dkt. 51-1, ¶ 64. Yet, Konda Technologies represented on its website that it would never license its intellectual property to FlexLogix. *E.g.*, Dkt. 1-7 at 1. Milks signed Defendants' opposition to QuickLogic's motion to dismiss. Dkt. 51 at 12. Milks also signed Defendants' proposed amendments to their Answer and Counterclaims. Dkt. 51-4 at 84.

Meanwhile, on February 3, 2022—nearly nine months after QuickLogic's counsel informed Defendants that they were representing QuickLogic in this matter (*see* Dkt. 1-4)—Milks informed QuickLogic for the first time that Defendants intended to file a motion to disqualify QuickLogic's counsel, via edits to a draft joint case management statement (*see* Dkt. 50-1, ¶ 17 & Dkt. 50-13 at 12). Defendants filed their disqualification motion on February 8, 2022, claiming that Defendants had been a potential client of QuickLogic's counsel. Dkt. 39 at 11:8–14:11. Milks signed Defendants' motion to disqualify. *See id.* at 14. In a declaration submitted under penalty of perjury, Dr. Konda claimed that he had been "alarmed when Baker Botts contacted me in connection with the dispute that led to the pending lawsuit and is representing QuickLogic against Konda Tech and me." Dkt. 39-1, ¶ 36. This representation was repeated in the motion to disqualify. *See* Dkt. 39 at 9:15–16.

The Court granted in part QuickLogic's motion to dismiss and denied Defendants' motion to disqualify on August 2, 2022. Dkt. 62. The Court dismissed virtually all of Defendants' counterclaims with prejudice (*see* 10:17–16:25), granting it leave only to amend its breach-of-contract counterclaim as to the informal dispute resolution clause "by September 1, 2022[]" (*see id.* at 17:3–8. Defendants failed to file an amendment. *See* Dkt. 83 at 2:18. In denying Defendants' motion to disqualify, the Court found that "[t]o the extent a conflict exists, Defendants have waived their right to pursue it[]" by engaging in a delay that was "unreasonable as a matter of law." Dkt. 62 at 9:6–24. In view of the record of the spurious motion to disqualify, this Court found that it had "serious doubts about whether Dr. Konda qualified as a prospective client" and that "all the information allegedly disclosed . . . is in the public domain" (*id.* at 10 n.3), and expressly found, "[g]iven the unlikelihood that an actual breach of confidentiality occurred,[] the strategic filing of the motion (filed just days after Defendants' motion to dismiss was denied), and the delay in filing,

1    Defendants' motion appears to be motivated by a desire to derail the ongoing litigation[]" (*id.* at

2    10:6–12 (footnote omitted)).

3        **D.    QuickLogic's Motion for Judgment on the Pleadings, Milks' Attempt to
         Withdraw, Tollefson, Dahlgren, Brahmbhatt's Appearances, and Defendants'**

4        **Second Motion to Dismiss**

5        After the Court had already dismissed Defendants' counterclaims with prejudice and in the

6    face of the clear record of bad conduct and misrepresentations in case filings, Tollefson, Dahlgren,

7    and Brahmbhatt appeared in the case. *See* Dkts. 65, 67, 68. Meanwhile, on September 29, 2022,

8    QuickLogic filed a motion for judgment on the pleadings, based on the fact that the Court's order

9    dismissing Defendants' mirror-image counterclaims with prejudice rendered QuickLogic's

10   declaratory judgment claims moot. *E.g.*, Dkt. 66 at 1:16–2:18. QuickLogic also asked the Court to

11   find that it was the prevailing party. *E.g.*, *id.* at 2:15–18.

12       On October 14, 2022, Milks attempted to withdraw from this case without first obtaining a

13   court order. *See* Dkt. 70. QuickLogic objected, informing Defendants and Defendants' Counsel that

14   it would continue to treat Milks as counsel of record, that Defendants and Milks had engaged in

15   sanctionable conduct, and that QuickLogic intended to seek fees at the conclusion of the case. *See*

16   Dkt. 73.

17       On December 14, 2022, Defendants filed a motion to dismiss QuickLogic's declaratory

18   judgment claims, which was signed by Dahlgren and submitted by Tollefson, Dahlgren, and

19   Brahmbhatt, despite the prior record in the case including Defendants' previous failed first motion

20   to dismiss. Dkt. 76. After nearly a year-and-a-half of litigation and its first failed motion to dismiss,

21   Defendants argued for the first time that QuickLogic's claims failed to satisfy the pleading

22   requirements (*id.* at 10:1–12:15) and that the Court lacked subject-matter jurisdiction over

23   QuickLogic's non-breach-of-contract claim (*id.* at 12:16–13:13).

24       The Court issued an order on August 11, 2023, (1) granting in part and denying in part

25   QuickLogic's motion for judgment on the pleadings and Defendants' motion to dismiss and

26   (2) instructing the parties to show case as to why it should not dismiss Defendants' state-law

27   counterclaims for lack of subject-matter jurisdiction. Dkt. 83. The Court found that QuickLogic was

28   the prevailing party and "award[ed] costs to QuickLogic." *Id.* at 8:1–9:8.

BAKER BOTTS L.L.P.

## IV.   LEGAL STANDARDS

### A.   The Court's Jurisdiction Over Award and Enforcement of Attorneys' Fees

District courts have discretion to exercise ancillary jurisdiction over an attorneys' fees disputes. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 971 (9th Cir.2014); *see also Law Offices of Bruce Altschuld v. Wilson*, 632 F. App'x 321, 322 (9th Cir. 2015) ("It is . . . well established that a federal court retains ancillary jurisdiction over attorneys' fees disputes collateral to the underlying litigation. (citing *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir.2004))); *Maxwell v. Kaylor*, No. 18-cv-06121-NC, 2022 WL 1123199, at *5 (N.D. Cal. Mar. 16, 2022) (explicitly retaining jurisdiction). "'[S]uch ancillary jurisdiction exists even after the underlying litigation has concluded.'" *Law Offices of Bruce Atschuld*, 632 F. App'x at 322 (quoting *K.C. ex rel. Erica C.*, 762 F.3d at 968 and citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). District courts also retain jurisdiction to award fees against attorneys even after they withdraw from a case. *See, e.g.*, *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (citing *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)) ("The fact that [counsel] was allowed to withdraw . . . does not protect him from sanctions based on a filing that he made before that withdrawal."). And district courts can exercise discretion to enforce attorneys' fees awards. *See, e.g.*, *Maxwell*, 2022 WL 1123199, at *5.

### B.   Attorneys' Fees Under 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  Under the statute, there are two basic requirements: (1) that the party seeking fees is a "prevailing party"; and (2) that the case is "exceptional."

An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts should determine whether a case is "exceptional" in the exercise of their discretion on a case-by-case basis, considering the totality of the circumstances. *Id*. Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and

the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6 (internal quotations marks omitted). A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id*. at 557–58. "Courts have interpreted § 285 to allow for the recovery of fees for time spent on the issue of attorneys' fees itself." *In re Personalweb Techs., LLC Patent Litig.*, No. 18-md-02834-BLF, 2021 WL 796356, at *14 (N.D. Cal. Mar. 2, 2021) (collecting cases).

### C.      Attorneys' Fees Under 28 U.S.C. § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "'[S]ection 1927 sanctions must be supported by a finding of subjective bad faith,' which 'is present when an attorney knowingly or recklessly raises a *frivolous* argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)).

### D.      Attorneys' Fees Under the Court's Inherent Authority

A district court may also impose attorneys' fees under its inherent authority. "[C]onduct that is 'tantamount to bad faith' is sanctionable." *Id*. at 1108 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). "'[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous . . . .'" *Id*. (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)). "'Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*. (quoting *Fink*, 239 F.3d at 994).

### E.      Joint and Several Liability for Attorneys' Fees Awards

District courts can hold parties and their counsel jointly and severally liable for attorneys' fees awards. *See, e.g.*, *Smart Wearable Techs. Inc. v. Fitbit Inc.*, No. 17-cv-05068-VC, 2018 WL 3201751, at *2 (N.D. Cal. June 27, 2018).

### F.      Requisite Connection Between Fees and Sanctionable Conduct

"[A] 'causal connection' is required between the misbehavior and the legal fees imposed,

1  which 'is most appropriately framed as a but-for test: The complaining party . . . may recover only

2  the portion of his fees that he would not have paid but for the misconduct.'" *In re Personalweb*

3  *Techs.*, 2021 WL 796356, at *3 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101,

4  109 (2017)). However, "[i]n *exceptional cases*, the but-for standard even permits a trial court to shift

5  all of a party's fees, form either the start or some midpoint of a suit, in one fell swoop." *Id.* (quoting

6  *Goodyear*, 581 U.S. at 110). For example, when "'everything the defendant did—his entire course

7  of conduct throughout, and indeed preceding, the litigation—was part of a sordid scheme to defeat

8  a valid claim.'" *Id.* (quoting *Goodyear*, 581 U.S. at 110). However, even when a case is not

9  exceptional, "courts . . . need not, and indeed should not, become green-eyeshade accountants . . . .

10 The essential goal in fee shifting is to do rough justice, not to achieve auditing perfection.

11 Accordingly, a district court may take into account its overall sense of a suit, and may use estimates

12 in calculating and allocating an attorney's time." *Id.*, at *5 (quoting *Goodyear*, 581 U.S. at 110).

13       **G.       Standard for Reasonable Fees**

14       To determine reasonable fees, courts "looks to the lodestar amount, which is presumptively

15 reasonable." *Id.*, at *5 (collecting cases). "The lodestar calculation requires examination of 'the

16 number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.*

17 (quoting *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). "[W]hile the

18 lodestar amount provides guidance, '[t]here is no precise rule or formula for making these

19 determinations.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "'The court

20 necessarily has discretion in making this equitable judgment.'" *Id.* (quoting *Hensley*, 461 U.S. at

21 437). The amount of fees also includes fees incurred in pursuing a successful motion for attorneys'

22 fees. *E.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017) (citation

23 omitted); *In re Personalweb Techs.*, 2021 WL 796356, at *14 (collecting cases).

24       In establishing the reasonable hourly rate, courts in this district have considered such factors

25 as: "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3)

26 the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82

27 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015) (citations omitted). "Where . . . a prevailing party has

28 obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will

BAKER BOTTS L.L.P.

encompass all hours reasonably expended on the litigation." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (internal citations omitted). In addition to fees, disbursements and expenses incurred in defending a case also are recoverable. *Takeda Chem. Indus., Ltd., v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1356 (Fed. Cir. 2000); *Mathis*, 857 F.2d at 759.

## V.    ARGUMENT

The Court should award QuickLogic all attorneys' fees that it has incurred in this matter. "[E]verything [Defendants and Defendants' Counsel] did—[their] entire course of conduct throughout, and indeed preceding, the litigation—was part of a sordid scheme to defeat [QuickLogic's declaratory judgment claims]" (*Goodyear*, 581 U.S. at 110)—first by attempting to swear they had no basis to allege patent infringement in connection with a first motion to dismiss, then by reversing course when that motion failed and seeking to gain leverage through a spurious disqualification bid, and ultimately followed by failing to defend its dismissed counterclaims while attempting to dismiss QuickLogic's claims a second time. An award of fees against Defendants is proper because this case is exceptional under 28 U.S.C. § 285, given the lack of any substantive merit to Konda's defenses and counterclaims and Konda's bad-faith litigation conduct and false filings. An award of fees against Defendants' Counsel is similarly proper because each acted in subjective bad faith, knowingly raising frivolous and false arguments and claims for the sole purpose of harassing QuickLogic to attempt to obtain some sort of settlement. And an award of fees against Defendants and Defendants' Counsel is otherwise proper under the Court's inherent authority for the same reasons. Accordingly, QuickLogic respectfully requests that the Court award it $471,382.18—the amount of fees thus far incurred—subject to adjustments for the fees incurred by QuickLogic in briefing this motion and other future events (such as any appeal). QuickLogic also respectfully requests that the Court hold Defendants and Defendants' Counsel jointly liable for these fees and retain jurisdiction to enforce its fees order(s).

### A.    Defendants' Conduct Is Sanctionable Under 35 U.S.C. § 285

This case is exceptional and Defendants' conduct is sanctionable under 35 U.S.C. § 285 based both on the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. ***First***, Defendants'

BAKER BOTTS L.L.P.

defenses and counterclaims were completely frivolous: none of their counterclaims survived the Court's analysis under Rule of Civil Procedure 12(b)(6) (*see* Dkt. 62), which "accept[ed] as true all well-pleaded allegations of material fact, and construe[d] them in the light most favorable to the non-moving party[]" (*Daniels-Hall v. Nat'l Educ. Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010)). Defendants could not plead facts sufficient to state their claims even after QuickLogic moved to dismiss, put Defendants on notice of the relevant legal standards, identified precisely what was wrong with each of Defendants' claims (*see* Dkt. 43), and Defendants thereafter submitted a proposed amended answer and counterclaims (*see* Dkt. 62 at 11:3–8). And given that Defendants' counterclaims were frivolous and that those counterclaims were mirror-images of QuickLogic's claims (*see* Dkt. 83 at 7:1–5), Defendants' defenses to QuickLogic's claims were frivolous as well. Despite two years of litigation, Defendants have yet to provide any factual or legal basis that would suggest their claims that QuickLogic breached the 2010 CLA (or were liable for the other state law counterclaims—including one that was not even cognizable) or infringed Defendants' patents have even a hint of merit.

**Second**, not only did Defendants litigate this case in an unreasonable manner, but they litigated this case in bad faith. The record is littered with Defendants' self-contradictory positions— including in sworn documents signed by Dr. Konda himself, which Defendants changed whenever necessary to keep their frivolous allegations alive. For example, despite sending QuickLogic a cease-and-desist letter accusing it of infringing Defendants' patents and breaching the 2010 CLA (Dkt. 1-5), after QuickLogic filed its declaratory judgment claims, Defendants twice alleged and declared under penalty of perjury that they did not "have any familiarity with the QuickLogic products prior to the present action being filed" or "conduct an infringement analysis." Dkt. 19 at 15:13–15, 15:21–22; Dkt. 19-1, ¶¶ 30–31; Dkt. 29 at 12:9–21; Dkt. 29-1, ¶¶ 40 & 41. They did so in a desperate attempt to have the Court find a lack of any case or controversy. *See* Dkt. 19-1 at 10:5–6 & 14:17–19. A mere **week** after the Court denied Defendants' motion to dismiss, Defendants sent QuickLogic a letter alleging that "QuickLogic put QuickLogic code developed with Konda Intellectual Property in OSFPGA repositories without Konda's permission to do so[,]" resulting in a breach the 2010 CLA and a revocation of the patent license contained therein. Dkt. 35-3, Ex. S.

Shortly thereafter, Defendants, through their attorney, claimed to QuickLogic that they could not "determine if QuickLogic is infringing any of the patents in the Konda interconnect patent portfolio at this time[,]" and demanded that QuickLogic provide informal discovery to allow Defendants to do so. *Id.*, Ex. R at 2. And then, a mere two days after that, Defendants filed an Answer and Counterclaims that *in the same filing* (1) claimed that they did "not have sufficient information to admit or deny" QuickLogic's declaratory judgment claims for non-breach of contract and non-infringement of patents (*see id.*, ¶¶ 24–80); and (2) asserted breach of contract and patent infringement counterclaims that mirrored QuickLogic's declaratory judgment claims (*see id.*, ¶¶ 107–27 & 177–416). Defendants represented via attorney argument in their opposition to QuickLogic's motion to dismiss Defendants' counterclaims that Defendants "ha[d] conducted a patent infringement analysis based on data regarding the development of QuickLogic products[]" (Dkt. 51 at 5:19–20) yet failed to provide any evidence that any such analysis had actually occurred. And Defendants' argued—supported by a declaration signed under penalty—that they were harmed because they were unable to enter into a license agreement with another company (FlexLogix) (Dkt. 51-4, ¶ 182; Dkt. 51-1, ¶ 64), yet *Defendants' own public website* stated that Defendants would *never* license their intellectual property to FlexLogix. *E.g.*, Dkt. 1-7 at 1. In other words, Defendants represented that their case was meritless when necessary (such as when trying to obtain dismissal for lack of subject-matter jurisdiction or seeking discovery), and reversed positions to represent that their case had merit when necessary (such as when asserting counterclaims and affirmative defenses).

Defendants' bad-faith litigation conduct is also not limited to misrepresentations and changing positions. Defendants filed a baseless disqualification motion against QuickLogic's counsel, leading the Court to conclude that "[g]iven the unlikelihood that an actual breach of confidentiality occurred,[] the strategic filing of the motion (filed just days after Defendants' motion to dismiss was denied), and the delay in filing, *Defendants' motion appears to be motivated by a desire to derail the ongoing litigation*[]" (*id.* at 10:6–12 (emphasis added and footnote omitted)).

Given the fact that Defendants' defenses and arguments were frivolous and that they litigated this case in bad faith, this case is exceptional and the Court should award fees against Defendants

Baker Botts L.L.P.

1    under 35 U.S.C. § 285.

2       **B.      Milks' Conduct Is Sanctionable Under 35 U.S.C. §285 and 28 U.S.C. § 1927**

3          Milks' conduct is sanctionable under 28 U.S.C. § 1927 because he engaged in subjective bad

4    faith, knowingly or recklessly raising frivolous arguments for the sole purpose of harassing

5    QuickLogic. *B.K.B.*, 276 F.3d at 1107. He was clearly involved even before this case was filed,

6    given the pre-suit attorney-like demands that Defendants sent to QuickLogic (*see, e.g.*, Dkt. 1-1,

7    Dkt. 1-5, Dkt. 1-17) and the fact that parts of Defendants' cease-and-desist letter was written in the

8    third person (*see* Dkt. 1-5 at 2). More importantly, however, Milks signed all of the filings described

9    immediately above. *See supra* § V.A. Accordingly, he at best facilitated, and at worst was the

10   mastermind behind the bad-faith litigation conduct that Defendants pursued in attempting to

11   advance their frivolous counterclaims and defenses—both of which are a violation of his duty as an

12   officer of the court. The fact that Milks has attempted to withdraw from the case is irrelevant. *See,*

13   *e.g.*, *Holgate*, 425 F.3d at 677 (citing *In re Itel Sec. Litig.*, 791 F.2d at 675) ("The fact that [counsel]

14   was allowed to withdraw . . . does not protect him from sanctions based on a filing that he made

15   before that withdrawal."). Milks' bad-faith litigation (and pre-litigation) conduct unquestionably

16   multiplied the proceedings in this case both unreasonably and vexatiously.

17         Milks' conduct should also be sanctioned under 35 U.S.C. § 285 for the same reasons as

18   Defendants.[2] *See, e.g.*, *Smart Wearable Techs.*, 2018 WL 3201751, at *2. Section 285 was enacted

19   to prevent "gross injustice" and deter exceptional conduct in litigation; as such, exempting attorneys

20

21   _____

22   [2] While the Federal Circuit has previously rejected the applicability of § 285 fees to attorneys, it did

23   so prior to the Supreme Court's decision in *Octane Fitness*. *See, e.g.*, *Phonometrics, Inc. v. ITT*

24   *Sheraton Corp.*, 64 F. App'x 219, 220 (Fed. Cir. 2003) (nonprecedential).  Critically, the Federal

25   Circuit cited no authority for why the party and its attorneys could not be joint and severally liable

26   under § 285.  *See id.* at 222.  This decision preceded *Octane Fitness*'s directive to read the statute

27   without adding additional requirements to its application. *See* 572 U.S. at 548 (rejecting the Federal

28   Circuit's application of 35 U.S.C. § 285 as "[in]consistent with the statutory text").  QuickLogic

respectfully submits that applying the teachings of *Octane Fitness* demands a different result.

BAKER BOTTS L.L.P.

from fee liability would not serve the goal. *See Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 690-91 (Fed. Cir. 1984) (recognizing that § 285 was enacted "to further equitable considerations . . . for the purpose of enabling a court to prevent gross injustice"); *see also* S. Rep. No. 1503, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S. Code Congressional Service 1386, 1387 ("provision is [] made general so as to enable the court to prevent a gross injustice to an alleged infringer") (addressing precursor to § 285); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 845 (E.D. Tex. Jan. 25, 2017) (recognizing that "if [courts] assume that Section 285 permits recovery only against the originally named nonprevailing party, then the law has perversely incentivized third parties to act in ways that stand out from established litigation norms"). Lawyers are officers of the court and are ultimately responsible for vetting the merits. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328 (Fed. Cir. 2011). Lawyers, including Milks, are not obligated to file and litigate non-meritorious cases on behalf of their clients. *Id*. This includes the "improper bringing of clearly unwarranted suits"—which are brought both by the party *and* their counsel. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372 (Fed. Cir. 2012) ("Section 285 was enacted to address a patent-specific policy rationale, awarding fees in 'exceptional cases' in which sanctions were necessary to deter the 'improper bringing of clearly unwarranted suits.'") (quotation omitted). Attorneys are responsible for the "improper bringing" and continued pursuit of "clearly unwarranted suits." *See id*.

**C.      Both Defendants' and Milks' Conduct Is Also Sanctionable Under the Court's Inherent Authority**

Both Defendants' and Milks' conduct is also sanctionable under the Court's inherent authority, for the same reasons discussed above in Sections V.A and B. Defendants and Milks pursued frivolous claims in bad faith to harass QuickLogic in the hopes of obtaining some sort of nuisance-value settlement. Although they did so knowing that these claims were frivolous, their conduct would also be sanctionable even if they had merely been reckless, given the frivolous nature of these claims and the fact that they were motivated to harass. *B.K.B.*, 276 F.3d at 1108.

**D.      Tollefson, Dahlgren, and Brahmbhatt' Conduct Is Also Sanctionable Under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's Inherent Authority**

Tollefson, Dahlgren, and Brahmbhatt's conduct is also sanctionable under 35 U.S.C. § 285,

BAKER BOTTS L.L.P.

28 U.S.C. § 1927, and the Court's inherent authority, for the same reasons discussed above in Sections V.A, B, and C. When Tollefson, Dahlgren, and Brahmbhatt joined this case, the Court had already dismissed Defendants' counterclaims with prejudice and denied the baseless disqualification motion. *Compare* Dkt. 62, *with* Dkts. 65, 67, & 68. The record was also already full of the self-contradictory positions that Defendants and Milks took in their efforts to advance Defendants' frivolous counterclaims and defenses and harass QuickLogic. Accordingly, these attorneys knowingly joined and furthered Defendants' and Milk's bad-faith scheme. And at each juncture, the shuffling of counsel itself was an improper attempt to prolong the case in an effort to harass QuickLogic. One of the first things Tollefson did after appearing in this case was inject himself into administrative communications between QuickLogic's counsel and the Court's courtroom deputy, attempting to delay as long as possible any hearing on QuickLogic's motion for judgment on the pleadings (and thus any final resolution of this lawsuit). *See* Dkt. 77-2. Tollefson, Dahlgren, and Brahmbhatt all signed off on Defendants' second motion to dismiss, which incredibly (and frivolously) alleged for the first time—after nearly a year-and-a-half of litigation and after Defendants had filed (and lost) counterclaims that mirrored QuickLogic affirmative declaratory judgment claims—that QuickLogic had somehow failed to plead facts sufficient to put Defendants on notice of QuickLogic's claims. *See* Dkt. 76. And these attorneys did so only after delaying their deadline to respond to QuickLogic's motion for judgment on the pleadings, without informing the Court that Defendants intended to file a cross-motion. *See* Dkt. 69. Accordingly, Tollefson, Dahlgren, and Brahmbhatt all knowingly participated in and furthered Defendants and Milk's bad-faith scheme to advance frivolous counterclaims and defenses and harass QuickLogic.

**E.    QuickLogic Is Entitled to Attorneys' Fees from the Beginning of This Matter**

This case originated in Defendants' and Milks' pursuit of frivolous claims, and—as discussed above—Defendants and Milks changed their representations throughout this litigation whenever necessary to keep their frivolous claims alive, harassing QuickLogic in the hopes of obtaining some sort of nuisance-value settlement, and even going so far as to file a baseless disqualification motion. Tollefson, Dahlgren, and Brambhatt all knowingly participated in and furthered this scheme. This is precisely the sort of case for which the Supreme Court in *Goodyear*

authorized courts to impose attorneys' fees from the beginning of a lawsuit. *Goodyear*, 581 U.S. at 110.

### F.   The Amount of Fees Sought By QuickLogic Is Reasonable

QuickLogic requests that the Court award it $471,382.18—the amount of attorneys' fees that QuickLogic has thus far incurred in litigating this case. As discussed below, the number of hours, the hourly rates, and the total amount of fees sought by QuickLogic are all reasonable.

#### 1.   The Number of Hours Billed to Litigate This Case Was Reasonable

Since May 3, 2021, QuickLogic's attorneys and legal professionals at Baker Botts have spent a total of approximately 608.9 hours on this case, for a total of $471,382.18 up to July 31, 2023. This total includes time spent responding to Defendants' pre-suit allegations and drafting QuickLogic's Complaint and litigating the various motions filed by QuickLogic and Defendants in this case. Since June 17, 2021 (the day after QuickLogic filed its Complaint), QuickLogic's attorneys and legal professionals at Baker Botts spent a total of approximately 539.6 hours on this case, for a total of $402,581.86 in fees up to July 31, 2023. This total includes time spent on litigating the various motions filed by QuickLogic and Defendants in this case. Approximately 518.3 hours and $389,906.57 were incurred from August 25, 2021 (the date Defendants filed their first motion to dismiss) through July 31, 2023. These totals do not include time spent after July 31, 2023, including but not limited to the hours spent pursuing attorneys' fees in this motion. A description of the hours spent is provided in the concurrently-filed Guske Declaration. Guske Decl. ¶ 3. QuickLogic can provide additional information to the Court pursuant to Local Rule 54-5(b)(2).

#### 2.   The Hourly Rates of QuickLogics' Attorneys Was Reasonable

QuickLogic seeks reimbursement for the fees of seven attorney and two paralegal timekeepers. The rates charged to QuickLogic are approximately $952 to $1,436.50 for partners, $918 to $977.5 for special counsel, $436.25 to $667.25 for associates, and $331.5 to $369.75 for paralegals. *See id.*, ¶¶ 4–13. These rates are consistent with rates in the American Intellectual Property Law Association 2019 Report of the Economic Survey ("AIPLA Report") for experienced patent litigation attorneys in the San Francisco market (*see* Ex. H (AIPLA Report) at I-29, I-42), considering inflation and the fact that the report is four years old. The Federal Circuit has recognized

the appropriateness of using the AIPLA Report to determine comparable reasonable hourly rates. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987–88 (Fed. Cir. 2000) (approving lodestar calculation by a trial court using AIPLA survey); *Mathis*, 857 F.2d at 755–56 (district court's conclusion that billing rates "generally corresponded to those presented in the [AIPLA] surveys and were [thus] reasonable in view of those surveys" was, "as the law makes clear," appropriate). The Guske Declaration and attached exhibits describe the qualifications of the attorneys and professionals for whose work QuickLogic seeks compensation. Guske Decl. ¶¶ 4–13 & Exs. B–G. The results obtained in this proceeding—the dismissal of all Defendants' patent infringement and state law counterclaims with prejudice— demonstrate the quality of representation provided by Baker Botts to QuickLogic. The hourly rates charged by the Baker Botts attorneys are therefore reasonable.

### 3. The Attorneys' Fees that QuickLogic Seeks Are Reasonable

The $471,382.18 in attorneys' fees QuickLogic is seeking resulting from the hours worked and rates charged is reasonable for several reasons. ***First***, a very favorable result was obtained— dismissal with prejudice of all of Defendants' patent infringement and state law counterclaims— avoiding intensive pretrial and trial phases of the case and fact and expert discovery. ***Second***, the fees QuickLogic seeks are reasonable for high-stakes patent litigation. For example, QuickLogic incurred substantially less attorneys' fees than the median amount expected through claim construction in cases where non-practicing entities attempt to pursue broad allegations.[3] S*ee* Ex. H (AIPLA Report), at I-145 (median estimated cost of litigation through claim construction where

---

[3] Defendants' claims were frivolous. However, they requested a staggering $1.5 million for their state-law counterclaims alone. *See, e.g.*, Dkt. 35, ¶ 127. Given Defendants' egregious behavior throughout the dispute, including continually duplicating expenses through baseless motions and using many counsel changes to extend the case, it is reasonable to treat this case as the equivalent of a large case under the AIPLA standards—even despite the absence of any factual or legal basis. Defendants' attempt to press 14 infringement counterclaims and three state-law claims also makes the comparison of this case to a large case under the AIPLA report.

BAKER BOTTS L.L.P.

more than $25 million at risk was $2,375,000), I-169 (same median estimated cost in litigation defending against non-practicing entity was $2,500,000). The fees QuickLogic seeks are appropriate, and they should be awarded in full.

### G. The Court Should Retain Jurisdiction Over Supplemental Fee Requests and the Enforcement of Its Fee Orders

Unfortunately, the total amount of fees that QuickLogic needs to spend litigating this case has not yet been determined. For example, the fees sought do not include the fees incurred by QuickLogic in drafting or otherwise litigating this motion, and do not include any future fees (such as any fees incurred on appeal). Accordingly, given that QuickLogic is also entitled to these additional fees (*see, e.g.*, *Blixseth*, 854 F3d at 632 (citation omitted); *In re Personalweb Techs.*, 2021 WL 796356, at *14 (collecting cases)), QuickLogic respectfully requests that the Court retain jurisdiction to consider supplemental fee requests. QuickLogic also respectfully requests that the Court explicitly retain jurisdiction to enforce its fee orders. *See generally Maxwell*, 2022 WL 1123199, at *5. The Court already retains jurisdiction over Defendants' current and withdrawn counsel. *See, e.g.*, *Holgate*, 425 F.3d at 677 (citing *In re Itel Sec. Litig.*, 791 F.2d at 675).

## VI. CONCLUSION

For the foregoing reasons, QuickLogic respectfully requests that the Court (1) find the case and Defendants and Defendants' Counsels' conduct exceptional, (2) sanction Defendants and Defendants' Counsel under § 285, § 1927, and/or the Court's inherent authority, and (3) award QuickLogic $471,382.18 in attorneys' fees against Defendants and Defendants' Counsel, jointly and severally. QuickLogic also respectfully requests that the Court retain jurisdiction over supplemental fee requests and the enforcement of its fee orders, including over Defendants' current and withdrawn counsel.

DATED: August 25, 2023

BAKER BOTTS LLP

By: /s/    *Sarah J. Guske*

G. Hopkins Guy III (CA Bar No. 124811)
Email: hop.guy@bakerbotts.com
John F. Gaustad (CA Bar No. 279893)
Email: john.gaustad@bakerbotts.com
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, CA 94304
T: (650) 739-7500
F: (650) 739-7699

Sarah J. Guske (State Bar No. 232467)
Email: sarah.guske@bakerbotts.com
101 California Street, Suite 3200
San Francisco, CA 94111
T: (415) 291-6200
F: (415) 291-6300

*Attorneys for Plaintiff QuickLogic Corporation*

BAKER BOTTS L.L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28